### THE PEJEPSCOT.

#### (District Court, D. Maine. October 6, 1914.)

#### No. 144.

1. TOWAGE (§ 11*)—DUTY OF CARE—INJURY TO TOW.

　　While a towing tug is not an insurer, her master is bound to the exercise of reasonable care and skill, commensurate with the difficulty of the undertaking, and failure therein is a fault which creates liability on the part of the tug for any resulting injury.

　　[Ed. Note.—For other cases, see Towage, Cent. Dig. §§ 11–23; Dec. Dig. § 11.*]

2. TOWAGE (§ 11*)—INJURY TO TOW—LIABILITY OF TUG.

　　Injury to a steamship while being berthed by a tug, by striking her anchor, which protruded slightly from the hawse hole, but was in plain view, against the wharf, *held* due solely to the fault of the tug, whose captain in charge of the movements failed to exercise due care.

　　[Ed. Note.—For other cases, see Towage, Cent. Dig. §§ 11–23; Dec. Dig. § 11.*]

In Admiralty. Suit by Furness, Withy & Co., Limited, as owner of the steamship Daltonhall, against the steam tug Pejepscot and the Central Towboat Company. Decree for libelant.

William H. Gulliver, of Portland, Me., for libelant.

Benjamin Thompson, of Portland, Me., for claimant and respondent.

HALE, District Judge. This libel of the owners of the steamship Daltonhall seeks to recover for injuries sustained by the steamship on February 19, 1910, while being docked by the steam tug Pejepscot at berth No. 3 of the Maine Central Railroad Company, in Portland Harbor. The steamship is 337 feet long, 45 feet beam. She arrived in Portland Harbor on February 19, 1910, with a cargo of 4,440 tons of China clay to be discharged at berth No. 3 of the Maine Central Railroad Company. She was drawing about 22 feet, and was in command of Captain Charles Anderson. The Maine Central Railroad Company's berth in question is located above two bridges. The channel at the berth is about 50 feet wide, and about 300 feet long. In order to reach the berth, it is necessary to pass through the draws of the Portland bridge, and of, the first Boston & Maine railroad bridge. After passing the draw of the railroad bridge, in order for a ship to enter the dredged channel alongside of the berth, she must be winded from a west course to an east northeast course. The tug is 102 feet long, 24 feet beam, 12 feet draft, of the burden of 79 tons, built expressly for towing. At the time of the injury the tug was under charter to the respondent, the Central Wharf Towboat Company, and was in command of Captain Swett, her regular master. As the work was of a character that Captain Swett was not familiar with, Captain Charles W. L. McDuffie, master of the steam tug Cumberland, was sent with Captain Swett to take charge of the docking of the Daltonhall. Captain McDuffie is a man of large experience, and had docked many vessels at this wharf. The libel alleges that he attempted to bring the Daltonhall alongside of the wharf, and,

in doing so, failed to use due care; that he negligently and carelessly caused the bow of the steamship to strike the wharf, so that the anchor on the port side of the steamship came in contact with the cap log of the wharf, and was forced back into the hawse pipe with such violence that the shank of the anchor was forced against the upper side of the hawse pipe, and caused it to crack and break; that such breaking and resulting damage were caused wholly by poor seamanship, lack of judgment, and due care on the part of the tug.

The defense is that the circumstances show no negligence on the part of the respondent; that the steam tug was of sufficient power and well adapted to the towage service, in charge of a master of large experience, of a pilot of exceptional qualifications, who had full charge of her docking, and had docked her many times before at the same place, and at the time in question exercised a high degree of care in the management of the tow; that the vessel encountered nothing but ordinary risks attending navigation of this kind; it is not clearly shown where the touching of the crown of the anchor occurred; no one thought at the time there was any injury; there was no lack of due care; there was no striking of the cap log with any force, any want of proper seamanship, or lack of judgment on the part of the tug; the injury, if any, was due to the negligence of the chief officer of the steamship in allowing the port anchor to protrude from the hawse pipe, in consequence of the chain having fouled the shank; of the failure to report the condition to Captain McDuffie of the tug while the ship was proceeding up the harbor, and as she was approaching the wharf; and, further, the ship's motion ahead at the time of the injury was by the use of her own bow line, in charge of her own chief officer; and the chief cause of the injury was the fact that the protruding of the anchor from the hawse pipe brought it into an unsafe and unseaworthy position for making a port landing. It is urged also that, before being towed to her berth, the Daltonhall should have had her anchor carefully stowed.

The towage service was performed on a cold morning in winter. In getting up the anchor of the Daltonhall, it appears there was a turn in the chain over the windlass, and the stock of the anchor was not brought snug up into the hawse pipe, but protruded a foot or two. It was, however, where it could have been seen by any one; whether or not it was actually seen by Captain McDuffie, is not made entirely clear. It appears he was on the bridge, however, during a portion of the time, at least, when the crew were getting up the anchor. In making the turn and bringing the steamer up to the wharf, the testimony convinces me that the ship was headed on to the wharf at an angle of from 35 to 45 degrees. From the whole record, I can have no doubt that, while proceeding at such angle, the crown of the port anchor struck the cap log of the wharf with such violence as either to force the shank of the anchor up into the hawse pipe and break it, or to make such a leverage against the inboard end of the pipe as to result in breaking it. The "cracking against the wharf" was heard in the forecastle. There is other testimony clearly showing that the injury occurred at this time. The fact that the wharf had been touched was reported to Captain Mc-

Duffie, who appeared surprised, but expressed his belief that no harm had been done. He testifies that there was no necessity for touching the wharf, and that he did not intend to touch it. I cannot agree with the contention of the claimant that the time of the injury is not clearly shown. From the whole record, I think the injury must have happened as I have briefly pointed out. The testimony of the captain and first officer, and others in behalf of the ship, is convincing on this point; and I cannot disregard the testimony of Burns, the stevedore, although he became confused during his examination. His story is clear that, as he saw the vessel approaching, he feared her weight would break into the wharf, and he moved back some feet from his first position; that the anchor did touch the cap sill; and that some shock to the vessel resulted.

[1, 2] The law of the case is not in dispute. The tug is not an insurer; she is liable for only ordinary care under all the circumstances of the case. Her master is bound, however, to exercise reasonable care and skill in the performance of his duty; and failure therein is a fault creating liability for resulting injury to the tow. He must use the ordinary prudence and judgment called for by the circumstances of the case. If the duty undertaken by him is difficult, he must use commensurate care and skill. The Margaret, 94 U. S. 494, 496, 24 L. Ed. 146; The L. P. Dayton, 120 U. S. 337, 351, 7 Sup. Ct. 568, 30 L. Ed. 669. Negligence is a question depending upon the circumstances of each case, and can rarely be absolutely defined as a matter of law. The case at bar presents some unusual features. From a careful study of the testimony, I am of the opinion that the master of the tug did not use the care which he should have used in the difficult service undertaken. He was a man of large experience; he had shown ability in the towage service, and for that reason was intrusted with this duty, for which his corporation was paid a commensurate sum. In a former case I had occasion to commend Captain McDuffie for his qualities as a seaman, and for his frankness and clearness of statement. I am the more reluctant to attribute fault to him in this case; but it often happens that the most skillful man is not always free from error. I cannot escape the conclusion that Captain McDuffie did not exercise the care he should have exercised under all the circumstances of the case, and that the injury came from such want of due care.

While it is prudent for a vessel to have her anchors carefully stowed, I cannot find that under all the circumstances in this case it was a fault for the Daltonhall, while she was in port, to have the anchor in the position in which it was at the time of the injury, protruding only slightly from the hawse pipe, and in plain view. I am of the opinion that the tug must be held solely at fault.

A decree in pursuance of this opinion may be presented.

Fritz H. Jordan is appointed assessor.