Paul J. GEERTSON, Donald Hogan, a Minor, by Paul Hogan, His Father and Next Friend, and Paul Hogan

v.

UNITED STATES of America, Appellant.

No. 11461.

United States Court of Appeals
Third Circuit.

Argued May 2, 1955.

Decided June 8, 1955.

Alan S. Rosenthal, Washington, D. C., Warren E. Burger, Asst. Atty. Gen.,

John W. McIlvaine, U. S. Atty., Pittsburgh, Pa., Samuel D. Slade, Alan S. Rosenthal, Attorneys, Department of Justice, Washington, D. C., for appellant.

William F. Illig, Erie, Pa., for appellees.

Before MARIS and HASTIE, Circuit Judges, and MILLER, District Judge.

MARIS, Circuit Judge.

The United States appeals from a decree entered in favor of the libellants by the District Court for the Western District of Pennsylvania in an action brought under the Public Vessels Act of 1925 [1] for the recovery of damages for personal injuries and property damage allegedly sustained as the result of the negligence of the officer in command of a Coast Guard patrol boat which was engaged in towing the Anna G, a disabled boat which the injured libellants were aboard, to its dock in the harbor of Erie, Pennsylvania. The facts as shown by the evidence and the findings of the district court were as follows:

On September 25, 1949, the libellants, Paul J. Geertson and Donald Hogan, and two other individuals, Albert H. Willert and David J. Shea, were on a fishing expedition on Lake Erie aboard the Anna G, a 23-foot inboard motorboat owned by Geertson. At approximately 5 P. M. they were returning to Erie harbor from the lake and were in the vicinity of the ship channel near the breakwater and within hailing distance of the Erie Coast Guard Station when the steel tiller cable on the Anna G slipped out of its slot so that the boat could not be steered and was hence temporarily disabled. Geertson then called upon the Coast Guard for assistance. The Coast Guard Patrol Boat 30311, 30-feet over-all, under the command of Chief Boatswain Harold H. Rohr, and with a crew of two, responded to Geertson's call and undertook to tow the Anna G to its mooring place at Maddy's dock at the foot of Walnut Street in Erie harbor, a point two miles to the westward. The weather was clear, the water was calm, the Anna G towed well and there was no surging.

Maddy's dock, on the west side of which Geertson customarily moored his boat, was L shaped, one portion extending northwardly from and at right angles to the shore line and the other portion, consisting of a crib dock, extending from the outer end of the first portion eastwardly parallel with the shore line. When the CG 30311 with the Anna G in tow neared this dock Rohr steered the CG 30311 in a southwestwardly direction toward the east side of the dock, where he believed the water was deepest and free from obstructions. Geertson on the Anna G then hailed the CG 30311, motioning and shouting that he wanted to be towed to the west side of the dock, but at no time thereafter did Geertson receive any response, by signal or otherwise, from anyone aboard the CG 30311 that the Anna G would be towed to where he had requested.

The CG 30311 approached the east end of the crib dock under reduced speed with the tow line shortened, then veered sharply to the right, whereupon the Anna G by reason of its disabled steering gear, sheered off to the left toward the crib dock. After making this turn, the CG 30311 coasted westwardly outside of the crib dock, not under power, while the Anna G continued to drift slowly in a southwesterly direction toward the east end of the crib dock. Geertson was then kneeling on the bow of the Anna G preparatory to grasping the piling at the edge of the dock in the belief that the tow had ended; Hogan was sitting behind Geertson on top of the cabin with his legs dangling over the edge; Willert and Shea were both in the aft cockpit. Rohr, apparently deciding to tow the Anna G to the west side of the dock, and without any warning to those aboard the Anna G of his decision to comply with Geertson's request, attempted to cause the Anna G to break its sheer and clear the east end of the crib dock by suddenly speeding up the CG 30311 still pulling

---

**I.** 46 U.S.C.A. § 781 et seq.

hard right. When this movement was undertaken Rohr was aware of the position of Geertson and Hogan in the Anna G and also was aware that the Anna G was without rudder.

When the CG 30311 surged ahead, the Anna G, rudderless, nonetheless continued to sheer to the left, its bow went under a heavy plank projecting northwardly from the east edge of the crib dock, and the plank struck Geertson, hurling him backward against Hogan and momentarily pinning both of them against the front of the cabin of the Anna G. Both were injured thereby and some slight damage resulted to the Anna G. The district court concluded that Rohr was guilty of gross negligence and wilful misconduct in executing this maneuver, that this was the proximate cause of the libellants' damages and that the United States was liable therefor under the Public Vessels Act. Judgment was accordingly entered for libellant Geertson in the sum of $8,373.65, for libellant Paul Hogan in the sum of $228.-35 and for libellant Donald Hogan in the sum of $500.00. This appeal followed.

■ The United States does not contend that the district court's findings of fact are erroneous. It could not successfully do so for the evidence amply supports them. What the United States contends is that it has not consented to be sued under the Public Vessels Act for the negligence or misconduct of Coast Guard personnel in the performance of their public duty to assist mariners in distress, and that the facts do not support the district court's conclusion that Rohr was guilty of gross negligence and wilful misconduct in this case.

■ We consider first the contention that the United States has not consented to be sued in this case. For this proposition the Government relies upon the opinion of this court in P. Dougherty Co. v. United States, 1953, 207 F.2d 626, certiorari denied 347 U.S. 912, 74 S.Ct. 476,

98 L.Ed. 1068. It is true that in the Dougherty case this court held that the United States is not liable for the fault of members of the Coast Guard in conducting a rescue operation at sea. We adhere to the rule which was applied in that case but we do not think that it is applicable here. For this case does not disclose a salvage or rescue operation which involved any of the hazards the existence of which were the basis for our decision in that case. The operation was not on the open waters of Lake Erie but in the calm protected harbor of the port of Erie. No danger existed from the elements or from the condition of the disabled Anna G. The operation undertaken by the Coast Guard was merely one of towing a small temporarily rudderless vessel to its dock within a harbor area, a task no different from that undertaken daily by tug boats in every busy harbor. Moreover even if it be thought that the operation at its inception was one of salvage it was certainly no more than an ordinary towage at the time of the injury to the libellants. It has been held that a change in conditions may convert a tow into a salvage operation [2] and there is no reason why the converse should not be equally recognized under appropriate circumstances.

■ We conclude that the Coast Guard was engaged in this case at the time of the injury in a towage and not in a salvage or rescue operation. It is settled by the opinion of the Supreme Court in Canadian Aviator, Ltd. v. U. S., 1945, 324 U.S. 215, 65 S.Ct. 639, 89 L.Ed. 901, that the United States is liable under the Public Vessels Act for the negligence of a public vessel and its crew in conducting a towage operation which results in injury to the tow. That principle is applicable here. We, therefore, need not consider the Government's second contention, namely, that the facts do not show gross negligence or wilful misconduct. For the duty of the tug

2. The Connemara, 1883, 108 U.S. 352, 2 S.Ct. 754, 27 L.Ed. 751; The City of Portland, 5 Cir., 1924, 298 F. 27; Waterman S.S. Corp. v. Shipowners & Merchants Towboat Co., 9 Cir., 1952, 199 F.2d 600, certiorari denied 345 U.S. 941, 73 S.Ct. 832, 97 L.Ed. 1367.

boat to the tow is to use ordinary care in performing the towage [3] even though it is performed without charge.[4] Accordingly we need not decide whether the district court correctly concluded that Rohr's negligence was gross since there can be no question under the facts that he was guilty at least of a want of ordinary care in executing the last maneuver of the CG 30311 without having warned Geertson and Hogan of his intention to do so in order that they might have an opportunity to protect themselves from the obvious danger to them which was involved in it. His negligence, whether gross or only ordinary, establishes the liability of the United States to the libellants.

The judgment of the district court will be affirmed.

---

3. The L.P. Dayton, 1887, 120 U.S. 337, 351, 7 S.Ct. 568, 30 L.Ed. 669; The Pejepscot, D.C.Me.1914, 217 F. 150, 152.

4. King v. Red Star Towing & Transportation Co., D.C.E.D.N.Y.1931, 48 F.2d 633, 634.