**WELLINGTON TRANSPORTATION COMPANY,**

v.

**UNITED STATES of America,**
**Defendant-Appellee.**

No. 72–1955.

United States Court of Appeals,
Sixth Circuit.

June 27, 1973.

Richard E. Fleury, Foster, Meadows & Ballard, Detroit, Mich., on brief, for plaintiff-appellant.

Ralph B. Guy, Jr., U. S. Atty., Detroit, Mich., Allen Van Emmerik, Admiralty & Shipping Section Dept. of Justice, Washington, D. C., Harlington Wood, Jr., Asst. Atty. Gen., Walter H. Fleischer, Stanton R. Koppel, Attys. Dept. of Justice, Washington, D. C., on brief for defendant-appellee.

Before CELEBREZZE, MILLER and LIVELY, Circuit Judges.

CELEBREZZE, Circuit Judge.

This is an appeal from the District Court's entry of judgment for Defendant-Appellee, the United States, in an admiralty suit under 46 U.S.C. § 781 in which a shipowner sought indemnity for attorney fees and litigation expenses incurred in successfully defending against an earlier state court action brought against the shipowner by an injured Coast Guardsman. Appellant shipowner also sought to recover damages sustained by its ship and allegedly caused by the negligence of the captain of a Coast Guard cutter.

The claims arose on February 2 and 3, 1969, when the Coast Guard cutter, the *Naugatuck*, was rendering ice-breaking and towing services to Appellant's auto ferry, the *Sugar Islander,* which was beset in the ice of the St. Mary's River. In an attempt to pull the ferry free from accumulated ice and into a channel which the cutter had made, a 3½ inch nylon mooring line was passed from the cutter to the ferry, and the eye of the line was placed over a cast-iron cleat located on the corner of the ferry closest to the cutter. At all times during the voyage under which the ferry became beset in the ice and during this attempted tow, Mr. Wellington, Appellant's President and normally the captain of the ferry, was aboard the cutter and, the ferry was operated by its alternate captain.

After the line was secured to the cleat, the captain of the cutter—who was standing on the bridge, half in and half out of the pilot house—gave full power to the cutter's engine, causing the cutter to surge ahead. The nylon line, which was capable of stretching 40 to 50 percent of its length began to smoke and fray. The cleat was torn from the ferry's deck and flew forward, striking the freezer door on the fantail of the cutter. Then either the cleat or the nylon line hit and fractured the leg of Coast Guardsman Clinton Otto, a seaman on the cutter who—unknown to the captain of the cutter and unknown to Mr. Wellington and other personnel assisting in the tow—was on the fantail of the cutter, attempting to get an axe located on the opposite side of the cutter from where the line had been passed to the ferry.

Coast Guardsman Otto subsequently filed suit against Appellant in a Michigan state court, seeking to recover for his injuries on the grounds of Appellant's alleged negligence and the alleged unseaworthiness of Appellant's ferry. After a full trial to the jury, a verdict of no cause of action was returned. Although it was thus successful in defending against Otto's state-court suit and was required to pay no damages to Otto, Appellant nonetheless incurred $12,500 in attorney fees, investigation expenses, witness costs and travel expenses directly related to its defense in the state-court action.

In its complaint before the District Court, Appellant sought to recover $500 in damages to the cleat, railing, and deck of its ferry, and $12,500 in attorney fees and expenses incurred in de-

fending against Otto's state-court suit. Alleging that the captain and crew of the Coast Guard cutter were solely negligent in the attempt to tow the ferry, Appellant asserted three basic theories as grounds for its claim for reimbursement of its attorney fees and litigation expenses: contractual indemnity, as recognized in Ryan Stevedoring Co., Inc. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), and its progeny; tort indemnity; and simple tort liability.

The District Court found that the cleat aboard the ferry was reasonably affixed for the purpose intended and that there was otherwise no negligence on the part of the ferry or its crew. The Court further found that the Coast Guard cutter and crew were negligent in applying a strong surge of power to the nylon line without ascertaining that the cutter's fantail was clear of personnel. The District Court therefore concluded that the Coast Guard cutter and its crew were solely responsible for the injuries sustained by Coast Guardsman Otto and that Appellant's ferry and its crew were in no way responsible for said injuries.

Notwithstanding these findings and conclusions, the District Court ruled that Appellant was without a remedy for the recovery of its attorney fees and litigation expenses. Ruling that the Coast Guard's towing services were not rendered pursuant to any express or implied contract, the Court rejected the argument that Appellant was entitled to indemnity under Ryan Stevedoring Co., Inc. v. Pan-Atlantic Steamship Corp., *supra*. Because the United States was not liable for injuries suffered by Coast Guardsman Otto, as an active member of the armed services [Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950)], the District Court similarly held that the theory of tort indemnity between two tortfeasors was inapplicable to Appellant's claims. The

Court further held that Appellant had neither alleged nor proven that Appellee had committed a tort against it. Judgment was therefore entered for Appellee.[1]

■ We agree with the District Court's determination that the contractual indemnity recognized in Ryan Stevedoring Co., Inc. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), is inapplicable to Appellant's claim in the present case. In the *Ryan* opinion, the Supreme Court emphasized that the warranty of workmanlike service deemed to be given by a stevedoring company is neither quasi-contractual nor implied in law, but rather said warranty has its basis in contractual duties undertaken by the stevedoring company. 350 U.S. at 133, 76 S.Ct. 232. While it is true that the *Ryan* doctrine has been applied in cases where the contractual relationship between the indemnitor and the indemnitee has been more attenuated than in the *Ryan* case [*see* Waterman Steamship Corp. v. Dugan & McNamara, Inc., 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169 (1960); DeGioia v. United States Lines Co., 304 F.2d 421 (2d Cir. 1962)], we are neither referred to nor do we find any cases applying the *Ryan* doctrine where the indemnitor was not rendering services pursuant to its contractual duties. *See* Schwartz v. Compagnie General Transatlantique, 405 F.2d 270, 275–276 (2d Cir. 1968).

■ In contrast, as the District Court correctly ruled, the United States Coast Guard undertakes neither express nor implied contractual duties when it offers towing services to private ships in peril. Section 88, U.S.C. Title 14, provides that the Coast Guard *may* provide assistance to save lives and property. Upon volunteering towing assistance, a Coast Guard vessel and its crew are bound not by a contractual duty and a warranty of workmanlike service, but

---

1. The United States filed a counterclaim for $4,245.00 in medical expenses incurred in its treatment of Otto's injuries. The District Court entered judgment for Appellant on this counterclaim, and no appeal has been taken by the United States.

rather by the lesser duty to exercise reasonable care in towing operations, Geertson v. United States, 223 F.2d 68 (3d Cir. 1955), and not to injure persons through the negligent performance of rescue operations. United States v. Lawter, 219 F.2d 559 (5th Cir. 1955). *Cf.* Indian Towing Co., Inc. v. United States, 350 U.S. 61, 69, 76 S.Ct. 122, 100 L.Ed. 48 (1955).

We therefore hold that the towing services undertaken by the Coast Guard in the present case were not rendered under a warranty of workmanlike service so as to invoke the *Ryan* indemnity doctrine. In so holding, we reject the contrary conclusion of the court in Nikiforow v. Rittenhouse, 319 F.Supp. 697, 702 (E.D.Pa.1970), upon which Appellant relies.

■ As an alternative to indemnity under the *Ryan* doctrine, Appellant contends that it is entitled to reimbursement from Appellee for attorney fees and expenses under the theory of tort indemnity. The District Court was of the view that Appellant's claim for indemnity under this theory was barred by Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), wherein the Supreme Court held that the United States is not liable under the Federal Tort Claims Act for injuries incurred by servicemen while on active duty and resulting from the negligence of other servicemen. We hold that the District Court erred in so ruling.

We do not read Feres v. United States, *supra,* as presenting a bar to a third party's claim aganst the United States for indemnification of damages awarded to an injured serviceman and attorney fees and expenses incident thereto. Rather, the *Feres* decision was concerned only with an injured serviceman's direct remedy against the United States, and nothing in the Court's opinion suggests that the holding of that case was intended to apply to a third party's claim for indemnity against the United States. As discussed in Barr v. Brezina Construction Co., 464 F.2d 1141, 1143–1144 (10th Cir. 1972), we believe the Supreme Court's decisions in Ryan Stevedoring Co., Inc. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 128–132, 76 S.Ct. 232, 100 L.Ed. 133 (1956) Weyerhaeuser Steamship Co. v. United States, 372 U.S. 597, 83 S.Ct. 926, 10 L.Ed.2d 1 (1963), and Treadwell Construction Co. v. United States, 372 U.S. 772, 83 S.Ct. 1102, 10 L.Ed.2d 136 (1963), support the conclusion that the *Feres* decision does not bar third-party indemnity claims against the United States arising out of suits by injured servicemen.

In light of our determination that Appellant's indemnity claim is not barred by Feres v. United States, *supra,* we further note that under federal maritime law reasonable attorney fees and litigation expenses are consistently awarded to an indemnitee where those fees and expenses are incurred in defending against the principal action under which the indemnitor is ultimately adjudged to be liable. *See* A. C. Isreal Commodity Co. v. American-West African Line, Inc., 397 F.2d 170, 172–173 (3d Cir.), cert. denied, 393 U.S. 978, 89 S.Ct. 446, 21 L.Ed.2d 439 (1968). Although in most of the relevant cases the indemnitee's defense against the principal action has been unsuccessful and attorney fees and expenses are thus awarded as incident to damages incurred by the indemnitee, there is no sound reason why such fees and expenses incurred in an indemnitee's successful defense of the principal action should not alone be indemnifiable. Indeed, a rule allowing indemnification for attorney fees and expenses incurred by an indemnitee in unsuccessfully defending against the principal action, yet denying the same for a successful defense would place a "premium on losing lawsuits." Massa v. C. A. Venezuelan Navigacion, 332 F.2d 779 (2d Cir. 1964).

■ To be entitled to indemnification of its reasonable attorney fees and litigation expenses incurred in successfully defending against Coast Guardsman Otto's state-court suit, Appellant must,

however, establish that those fees and expenses were incurred in defending against a liability which would have been indemnifiable had Appellant's state-court defense not been successful —rendering the United States, as indemnitor, the beneficiary of Appellant's successful defense. *See* American Export Lines v. Norfolk Shipbuilding & Drydock Corp., 336 F.2d 525, 527 (4th Cir. 1964). Thus, Appellant must establish that its attorney fees and litigation expenses were incurred in defense of a liability based upon Appellant's "passive," "constructive," "viciarious," or "insulated" fault, for which the Coast Guard was the "primary" or "active" wrongdoer. *See* Wallenius Bremen G. m.b.H. v. United States, 409 F.2d 994, 998 (4th Cir. 1969), cert. denied, 398 U. S. 958, 90 S.Ct. 2164, 26 L.Ed.2d 542 (1970).

The record before us contains no evidence of the nature of the liability asserted in Coast Guardsman Otto's suit against Appellant in the state court. We are thus unable to determine whether that suit presented Appellant with a potential liability for which the United States owed a duty of indemnification.

We therefore vacate the judgment of the District Court and remand the case for further proceedings under Appellant's claim against Appellee for attorney fees and expenses under the theory of tort indemnity and specifically for a determination of whether or not the liability defended against by Appellant in the state-court suit was indemnifiable.

■ We further conclude that under the theory of simple tort liability Appellant has presented a valid claim against Appellee, pursuant to 46 U.S.C. § 781, for physical damage to its ferry caused by the negligence of the Coast Guard captain during the towing operation. *See* Geertson v. United States, 223 F.2d 68 (3d Cir. 1955). Although Appellant alleged in its complaint that these damages totaled $500, the District Court apparently overlooked this claim and made no findings with respect to the amount of these damages.

The judgment of the District Court is vacated and the cause is remanded for further proceedings under Appellant's claims for tort indemnity of its legal fees and expenses and for damage to its ferry.