John C. DONHAM, Plaintiff,

v.

UNITED STATES of America et al., Defendants.

STENCEL AERO ENGINEERING CORP., Cross-Plaintiff-Appellant,

v.

UNITED STATES of America, Cross-Defendant-Appellee.

No. 75–1516.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 11, 1976.

Decided June 4, 1976.

Thomas J. Whalen, Condon & Forsyth, New York City, for appellant; Stephen R. Stegich, III, New York City, William A. Richter and Arthur L. Smith, Peper, Martin, Jensen, Maichel & Hetlage, St. Louis, Mo., on brief.

Thomas S. Martin, Atty., Civil Div., U. S. Dept. of Justice, Washington, D. C., for appellee; Rex E. Lee, Asst. Atty. Gen., Jefferson City, Mo., Donald J. Stohr, U. S. Atty. (Barry A. Short, U. S. Atty., effective May 15, 1976), St. Louis, Mo., and William Kanter, Atty., Dept. of Justice, Washington, D. C., on brief.

Before GIBSON, Chief Judge, BRIGHT, Circuit Judge, and VAN PELT, Senior District Judge.*

BRIGHT, Circuit Judge.

This appeal presents an important issue under the Federal Tort Claims Act (FTCA): whether the United States which is immune

---

* ROBERT VAN PELT, Senior District Judge, District of Nebraska, sitting by designation.

1. Neither the plaintiff, Captain Donham, nor a third defendant, Mills Manufacturing Corporation, is a party to this appeal. We are concerned here only with the rights, if any, of

to liability for its negligent conduct producing injury and damages to an on-duty serviceman may, nevertheless, be obligated indirectly to pay the amount of such damages through a claim for tort indemnity asserted by a third party who becomes liable for tort damages to that serviceman. We answer that issue in the negative.

Captain John C. Donham, an Air Force Reserve pilot assigned for training to the Missouri Air National Guard, while flying over Eastern Missouri, ejected from his military aircraft under emergency conditions. As a result of the malfunctioning of his aircraft's "egress life support system," he claims to have sustained serious and permanent injuries. This incident gives rise to the present appeal. Stencel Aero Engineering Corporation (Stencel) manufactured this system. Donham brought an action to recover for his bodily injuries, and he named as defendants, Stencel, the United States, and Mills Manufacturing Corporation. Stencel answered the complaint denying any liability and instituted a cross-claim against the United States for total indemnity.

The United States moved for judgment on the pleadings against both Captain Donham and Stencel. In response to this motion, the district court dismissed Captain Donham's action against the United States on grounds of sovereign immunity, relying upon *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), and *United States v. Demko*, 385 U.S. 149, 87 S.Ct. 382, 17 L.Ed.2d 258 (1966). Relying on these same cases, the district court also dismissed Stencel's cross-claim for indemnity. The court certified its disposition of Stencel's cross-claim as a final appealable judgment under Rule 54(b), Fed.R.Civ.P., and Stencel now appeals that judgment.[1]

Although the doctrine of *Feres v. United States, supra*, precludes Captain Donham

Stencel to seek indemnity against the United States for the claim made against it by the serviceman. Since judgment was granted prior to any discovery, we are concerned only with the facts as pleaded.

from proceeding directly against the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2674, that doctrine, according to Stencel's contention, does not preclude Stencel as a nonmilitary third party from obtaining restitution by way of indemnity against the United States for any damages which it might be compelled to pay to Donham. Stencel alleges that it manufactured and constructed the ejection system according to specifications and requirements provided by the United States and, in part, using components supplied by the United States.[2] After manufacture, Stencel alleges that the United States took custody and control of the egress system and assumed responsibility to repair and maintain the system and to warn and instruct government employees in its proper use.

Stencel alleges that these facts imposed an independent duty upon the United States to assure Stencel that the system was not defective or inherently dangerous. Stencel argues that should it suffer any liability because of the Government's breach of its duty, it should recover indemnification in full. Further, Stencel alleges that if Donham's injuries resulted from negligence, the Government's conduct constituted active negligence but Stencel's improper conduct, if any, constituted passive negligence. Stencel argues that such a disparity of fault gives rise to a right of indemnity in favor of Stencel. Stencel asserts, appropriately, that judgment on the pleadings for a dismissal can be sustained only if it is clear beyond doubt that Stencel could prove no set of facts in support of its indemnity claims, entitling it to relief. See Conley v. Gibson, 355 U.S. 41, 45–46, 78

S.Ct. 99, 2 L.Ed.2d 80 (1957); Bramlet v. Wilson, 495 F.2d 714, 716 (8th Cir. 1974).

Stencel relies upon the Supreme Court's statement that through the FTCA the United States has waived its immunity from tort suits in "sweeping language." United States v. Yellow Cab Co., 340 U.S. 543, 547, 71 S.Ct. 399, 95 L.Ed. 523 (1951).[3] Generally, the United States subjects itself to suit under the FTCA to the same extent as a private individual under similar circumstances in accordance with the law of the state where the tort occurred. Stencel cites several Missouri cases for the proposition that indemnity relief would be available to it under state law. Feinstein v. Edward Livingston & Sons, Inc., 457 S.W.2d 789 (Mo.1970); Kansas City Southern Ry. Co. v. Payway Feed Mills, Inc., 338 S.W.2d 1 (Mo.1960); Western Casualty & Surety Co. v. Shell Oil Co., 413 S.W.2d 550 (Mo.App. 1967). While the United States denies that Missouri law authorizes indemnity under similar circumstances, it asserts as its principal defense that federal law applies and that a claim for damages sustained by a serviceman on active duty, whether asserted directly by that serviceman or indirectly by a third party by way of indemnity, is barred by application of the doctrine of the Feres case.

I. *The Scope of the Federal Government's Waiver of Sovereign Immunity Is a Question of Federal Law.*

The Federal Tort Claims Act substantially changed prior law. First, it waived the Government's sovereign immunity to most tort actions and provided for suits against the United States in the federal district courts. Second, it adopted the substantive law of the state in which the tort occurred

---

**2.** The Government's brief cites several cases which suggest that these allegations, if true, may constitute a defense by Stencel to Captain Donham's complaint. See, e. g., Littlehale v. E. I. du Pont de Nemours & Co., 268 F.Supp. 791, 804 (S.D.N.Y.1966), aff'd, 380 F.2d 274 (2d Cir. 1967); Myers v. United States, 323 F.2d 580 (9th Cir. 1963); Merritt, Chapman & Scott Corp. v. Guy F. Atkinson Co., 295 F.2d 14, 16 (9th Cir. 1961). This question is not before us.

**3.** 28 U.S.C. § 2674 (Federal Tort Claims Act), in part provides:

The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

The jurisdictional counterpart of this provision is contained in 28 U.S.C. § 1346(b).

as the standard of conduct to assess the Government's liability. Since, as we have previously observed, the scope of the waiver of sovereign immunity is quite broad, federal courts have usually focused upon interpretation and application of state law in resolving claims for indemnity.[4]

However, the extent of the waiver remains an important consideration. Without a waiver of sovereign immunity applying to the claim asserted, the claim against the Government must fall. Where a question arises as to the extent of the waiver of sovereign immunity under the FTCA, the issue "is a question of federal law, separate and prior to the question of  *  *  *  liability under state law." *See Galimi v. Jetco., Inc.,* 514 F.2d 949, 952 (2d Cir. 1975); *Travelers Insurance Co. v. United States,* 493 F.2d 881, 883 (3d Cir. 1974).

II. *The United States Has Not Consented Under the Federal Tort Claims Act to be Sued for Indemnity by a Government Contractor Who is Liable to a Serviceman for Injuries Occurring on Active Duty.*

Where the United States authorizes suit under the FTCA, its liability is determined by the law of the place where the act or omission occurred to the same extent as a private defendant. 28 U.S.C. § 1346(b). That the Act incorporates such state standards is a matter "not without significance" in determining "whether the Act should be construed to apply  *  * ." *Feres v. United States, supra,* 340 U.S. at 142, 71 S.Ct. at 157. Stencel's claim against the United States rests upon two basic relationships—first, the military relationship between Captain Donham and the United States, and second, the military-contractual relationship between the United States and Stencel. In order to justify Stencel's action against the United States, we must infer that Congress in the FTCA intended that state law apply to situations arising out of these two relationships.

Each of these relationships long has been held to be governed exclusively by federal law. In *Feres,* the Supreme Court reaffirmed the long-recognized rule that the "relationship between the Government and members of its armed forces is 'distinctively federal in character'  *  *  * ." 340 U.S. at 143, 71 S.Ct. at 158, *quoting United States v. Standard Oil Co.,* 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947). In *Standard Oil,* the court emphasized that

[t]o whatever extent state law may apply to govern the relations between soldiers or others in the armed forces and persons outside them or nonfederal governmental agencies, the scope, nature, legal incidents and consequences of the relation between persons in service and the Government are fundamentally derived from federal sources and governed by federal authority. [*Id.* at 305–06, 67 S.Ct. at 1607.]

Likewise, it is firmly established that the rights and duties of the United States arising pursuant to its contractual obligations primarily are governed by federal common law. *Ivanhoe Irrigation District v. McCracken,* 357 U.S. 275, 78 S.Ct. 1174, 2 L.Ed.2d 1314 (1958); *see Clearfield Trust Co. v. United States,* 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943). *Cf. Whelan v. Penn Central Co.,* 503 F.2d 886 (2d Cir. 1974).

Thus, both essential aspects of the current case have long been committed to federal law. To conclude that the general language of the FTCA makes applicable the vagaries of state law would surely be, in the language of *Feres,* to "visit the Government with novel and unprecedented liabilities." 340 U.S. at 142, 71 S.Ct. at 157. Again, in the language of *Feres,* "[w]e can-

---

4. *See, e. g., Adams v. General Dynamics Corp.,* 535 F.2d 489 (9th Cir. 1976) (California law); *Certain Underwriters at Lloyd's v. United States,* 511 F.2d 159 (5th Cir. 1975) (Louisiana law); *Maddux v. Cox,* 382 F.2d 119 (8th Cir. 1969) (Arkansas law); *United Air Lines v. Wiener,* 335 F.2d 379 (9th Cir.), *cert. dismissed,* 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 549 (1964) (Nevada law).

not impute to Congress such a radical departure from established law in the absence of express congressional command." *Id.* at 146, 71 S.Ct. at 159.

■ The rationale of the Court in *Feres* is, we believe, applicable to Stencel's indemnity claims. This bolsters our conclusion that Congress did not intend to permit this type of indemnity claim under the FTCA.

■ In *Feres*, the Court first observed that the FTCA was not intended to create new and unusual causes of action but was simply intended to permit the application of *appropriate* state law. *Id.* at 142, 71 S.Ct. 153. The Court then noted that the Government's authority over a member of the Armed Services is without parallel among private parties.[5] In particular, the Government's right to assign a serviceman to active duty in any single state or to several states makes it unreasonable that rights and obligations between the active duty soldier and his government should turn on accidents of political geography. *Id.* at 143, 71 S.Ct. 153. These same considerations militate strongly against Stencel's indemnity claims as well. Precisely because of the Government's unique interests and powers, its contractual obligations with material suppliers are controlled by federal law. The policies behind this rule become particularly compelling when the Government is purchasing military equipment. The Government is privileged to procure, maintain, and utilize its military hardware in a manner inappropriate for private par-

ties. The mobility of the Armed Forces is due, in large part, to military equipment such as Captain Donham's aircraft, which can move rapidly across this country as well as overseas.

■ It makes little sense to say that the duty of the United States to indemnify Stencel, a North Carolina corporation, should turn upon the fortuity that an aircraft which incorporated a Stencel product happened to crash in Missouri. Thus, since Stencel's relationship to the United States lies in a military context and the claim arises out of injuries to a serviceman, the underlying rationale of the *Feres* case suggests that provisions of the FTCA should not be read to extend to such relationships. Moreover, we think it would be anomalous to insulate the United States from claims of a serviceman for recovery of tort damages for service-incurred injuries but authorize a third party in the position of Stencel to force the United States to indirectly pay those damages.

■ In our view, the rule adopted in *Feres* serves to bar the serviceman's claim for injuries whether asserted directly by him or asserted by one seeking restitution through a tort indemnity theory.[6] This result, though not necessarily the rationale, receives support from other decided cases.

Five courts of appeals have faced the question of a claim against the United States under the FTCA for indemnity of claims arising from injury in a military context. All but one of these courts have

---

5. In commenting upon *Feres*, in a 1954 case, the Court noted the special nature of the military relationship:

> The peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty, led the Court to read that Act as excluding claims of that character. [*United States v. Brown*, 348 U.S. 110, 112, 75 S.Ct. 141, 143, 99 L.Ed. 139 (1954).]

*See Alexander v. United States*, 500 F.2d 1 (8th Cir. 1974).

6. Stencel has been careful to confine its contract-related claim to the assertion of a duty "*implied in law* out of the relationship between Stencel and the United States * * *." However, Stencel has cited some authority for the proposition that, in at least some government contracts which set detailed standards of performance, an agreement to indemnify is *implied in fact. See, e. g., J. D. Hedin Const. Co., Inc. v. United States*, 347 F.2d 235, 241, 171 Ct.Cl. 70 (1965). Such alleged right, if cognizable as a contract right, might be asserted in the Court of Claims under the Tucker Act, 28 U.S.C. § 1346(a)(2). *See Murray v. United States*, 132 U.S.App.D.C. 91, 405 F.2d 1361, 1366 (1968); *cf. Travelers Insurance Co. v. United States*, 493 F.2d 881, 999 (3d Cir. 1974).

denied indemnity and contribution.[7] However, the circuits have not adopted a consistent rationale and the language of the various opinions cannot be harmonized. Although several of these opinions have said that the *Feres* holding is not a *per se* bar to third party indemnity claims, none has considered whether the considerations underlying *Feres* require a limitation of the right under the FTCA to seek indemnity against the United States for damages paid to compensate for a serviceman's injury.

The most recent decision of which we are aware is *Adams v. General Dynamics Corp.*, 535 F.2d 489 (9th Cir. 1976). In *Adams*, the Ninth Circuit reaffirmed its prior holdings denying indemnity in *Wien Alaska Airlines, Inc. v. United States*, 375 F.2d 736 (9th Cir.), *cert. denied*, 389 U.S. 940, 88 S.Ct. 288, 19 L.Ed.2d 291 (1967), and *United Air Lines, Inc. v. Wiener*, 335 F.2d 379 (9th Cir.), *cert. dismissed sub nom., United Air Lines, Inc. v. United States*, 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 549 (1964). In each of these cases the claims arose out of a collision between a military and a private aircraft resulting from the fault of both pilots. In *Wiener*, the negligence of the military pilot was primarily responsible for the collision. The court permitted United Air Lines to recover full indemnity against the Government for the damages paid all civilian passengers of the private aircraft. However, the court denied any restitution to United Air Lines for damage awards to the civilian and military federal employees injured while flying in the military aircraft.

With respect to the civilian federal employees, the court held that neither "contribution nor indemnity may be awarded without the support of liability on the part of the indemnitor [the United States] to the person injured [the civilian government employees]." *Id.* at 403. The court held that the exclusive liability provision of the Federal Employees' Compensation Act precluded finding the necessary tort liability of the Government to the civilian employees. The court then considered the servicemen cases and ruled that

> [w]ith respect to the two servicemen cases, United's claim for indemnity must fall for the reason that the government is not liable under the Federal Tort Claims Act for injuries to servicemen where injuries arise out of or are in the course of activity incident to service. *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 * * *. [*Id.* at 404.]

The other two Ninth Circuit cases involve similar facts and reach the same result. All of these decisions rested solely upon tort liabilities; no implied contractual or quasi-contractual rights—attenuated or otherwise—were advanced or decided. *Cf. Ryan Stevedoring Co., Inc. v. Pan-Atlantic S.S. Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956); *Weyerhaeuser S.S. Co. v. United States*, 372 U.S. 597, 83 S.Ct. 926, 10 L.Ed.2d 1 (1963).

In *Maddux v. Cox*, 382 F.2d 119 (8th Cir. 1967), a Navy vehicle collided with a private auto as the result of mutual fault. A serviceman passenger in the Navy vehicle recovered against the private driver. The private driver, in turn, sought to shift part or all of the burden to the United States because of the negligence of the Navy driver. The court construed the claim as one for contribution and denied recovery on the merits. Although the case was technically decided under state law, the Ninth Circuit's decisions in *Wien* and *Wiener, supra*, were cited [8] for the proposition that such recovery could not be had in the absence of direct liability of the United States to the injured

---

**7.** A number of federal courts have discussed a somewhat analogous issue raised by the exclusive remedy provision of the Federal Employees' Compensation Act (5 U.S.C. § 8116(c)) and with varying rationales have either denied or allowed third party recovery for contribution or indemnity from the United States. *See Wallenius Bremen G.m.b.H. v. United States*, 409 F.2d 994 (4th Cir. 1969), *cert. denied*, 398 U.S. 958, 90 S.Ct. 2164, 26 L.Ed.2d 542 (1970); Annot., 12 A.L.R.Fed. 616 (1972).

**8.** 382 F.2d at 124. Because of these citations, *Maddux* has been read as applying to indemnity as well as contribution. *Newport Air Park, Inc. v. United States*, 419 F.2d 342 (1st Cir. 1969); *Murray v. United States*, 132 U.S.App. D.C. 91, 405 F.2d 1361 (1968).

party. Again, no contractual relationship existed between the party seeking indemnity and the United States.

The Tenth Circuit considered a similar issue in *Barr v. Brezina Construction Co.*, 464 F.2d 1141 (10th Cir. 1972), *cert. denied*, 409 U.S. 1125, 93 S.Ct. 937, 35 L.Ed.2d 256 (1973). There, two contractors had remodeled a building at Hill Air Force Base pursuant to faulty government specifications. A serviceman sustained injuries because of the faulty construction and brought suit against the contractors. The contractors settled the claim for $45,000, then sought indemnity from the United States. The district court dismissed the complaint, holding that *Feres* barred any indemnity and, alternatively, that the contractors were guilty of active negligence in knowingly constructing the building in compliance with patently defective specifications. The Government's negligence in providing the specifications was termed passive.

The Tenth Circuit ruled that the *Feres* doctrine *per se* did not preclude the action for indemnity, and stated in addition that under the Supreme Court's holdings in *Ryan Stevedoring Co., Inc. v. Pan-Atlantic S.S. Corp., supra* ; *Weyerhaeuser S.S. Co. v. Nacirema Operating Co., Inc.*, 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958); and *Treadwell Construction Co. v. United States*, 372 U.S. 772, 83 S.Ct. 1102, 10 L.Ed.2d 136 (1963), "a party seeking indemnity is not barred at the threshold." 464 F.2d at 1144. However, the court went on to affirm the dismissal of the indemnity claim on the grounds that the contractor's active negligence precluded ordinary tort indemnity and that no implied warranty

could be found to support a quasicontractual claim.

The court specifically declined to extend the Supreme Court's admiralty-related cases to cover the situation. The court said:

> [W]e are constrained to hold that neither the *Ryan* nor *Weyerhaeuser* nor any of the other *Ryan* progeny governs. These cases all arise in the admiralty area, and most courts have refused to apply liberally the concept of implied warranty or implied contract to indemnify in other fields. [464 F.2d at 1145 (footnote omitted).]

Appellant-Stencel emphasizes the following language from *Barr* :

> [I]t does not follow [from *Feres* ] that a defendant-third-party plaintiff who has been subjected to liability by a serviceman inherits, so to speak, the limitations which apply to the serviceman, since his is an independent remedy based on different considerations. [*Id.* at 1143.]

This statement is correct as far as it goes. However, it does not proceed to an analysis of those "different considerations" in light of the *Feres* rationale. In *Barr*, the contractor's own active negligence offered a simple basis for affirming the dismissal. Here, because of the sparse record, we have been compelled to squarely confront the reach of the FTCA in circumstances of this case in light of the underlying rationale of *Feres*.[9]

The Fifth Circuit considered the indemnity issue as related to an injured serviceman in *Certain Underwriters at Lloyd's v. United States*, 511 F.2d 159 (5th Cir. 1975).

---

9. It is interesting that the Ninth Circuit panel which decided *Adams v. General Dynamics Corp. supra*, included both the trial judge in *Barr* and a member of the appellate panel in that case. The *Adams* panel notes that the broad language of *Barr* is somewhat inconsistent with other Tenth Circuit precedent and suggests that the decision should be considered to rest upon the active negligence of the contractors and the passive negligence of the Government. 435 F.2d at 491 n. 6.

That panel observed that the ambiguous holding and peculiar history of *Treadwell Con-* *struction Co. v. United States, supra* (*per curiam*), is of " 'little manifest significance,' " and that the Supreme Court has, in fact, " 'left the issue [of third party indemnity in nonadmiralty cases] squarely undecided.' " 435 F.2d at 491 n. 6, *quoting* Note, *Federal Law—Contribution and Indemnity Under the Federal Employees' Compensation Act*, 6 Toledo L.Rev. 272, 282 n. 42 (1974). The *Treadwell* decision seems of limited significance in cases arising out of injuries to a member of the Armed Forces on active duty.

There a military serviceman sustained injuries at the hands of a surgeon and nurses of the United States Public Health Service. The district court had dismissed his suit against the surgeon and nurses as not sanctioned by the FTCA read in light of *Feres.* This ruling was not appealed by the serviceman. However, the serviceman also had brought a direct action against the malpractice insurer of the operating surgeon as permitted by Louisiana law. Lloyd's, the insurer, settled the case for $75,000, and sought contribution from the Government on the theory that the United States Public Health Service nurses assisted in the allegedly negligent treatment. Lloyd's contended that according to the Louisiana Civil Code, this made the nurses, and hence the United States, liable to Lloyd's as debtors "in solido." [10]

The court determined that under Louisiana law no right to contribution existed because the United States could not be held liable to the serviceman in his own right and hence, could not be considered liable "in solido" with Lloyd's. The court considered its conclusion to be consistent with that reached by this circuit in *Maddux v. Cox, supra,* 511 F.2d at 163. It noted that the insurer had relied on the opinions in *Barr v. Brezina Construction Co., supra,* and *Wellington Transportation Co. v. United States,* 481 F.2d 108 (6th Cir. 1973), discussed *infra.* Although these decisions did not compel a determination favorable to the insurer, the court stated:

> We are in agreement with the expression in those opinions that *Feres* itself does not bar a third party suit against the United States for indemnity. [511 F.2d at 163.]

As in *Barr v. Brezina Construction Co., supra,* the court did not discuss whether the underlying rationale of *Feres* might preclude indemnity.

In *Wellington Transportation Co. v. United States, supra,* the Sixth Circuit held that a third party in a posture similar to that of *Stencel* may obtain indemnity. *Wellington* arose under admiralty law when a Coast Guard cutter and an automobile ferry, operated by Wellington Transportation Company, collided. A member of the Coast Guard in active service was injured and brought an action against Wellington to recover for his injuries. He failed in his claim but Wellington incurred substantial expense in defending the action. Wellington thereafter brought an action against the United States for indemnity to obtain reimbursement of the attorney's fees and expenses incurred in successfully defending against the principal action.

The court rejected a contractual indemnity theory such as was recognized by the Supreme Court in *Ryan Stevedoring Co., Inc. v. Pan-Atlantic S.S. Corp., supra.* As an alternative, Wellington claimed entitlement to reimbursement under the theory of tort indemnity. The district court had denied the claim relying on *Feres.* The Sixth Circuit disagreed, reading *Feres* as "concerned only with an injured serviceman's direct remedy against the United States" and finding that "nothing in the Court's opinion suggests that the holding of that case was intended to apply to a third party's claim for indemnity against the United States." 481 F.2d at 111. The court then determined that the right to tort indemnity was properly allowable under federal maritime law. However, the court remanded for further proceedings since the record did not establish that appellant's attorney's fees had been incurred in defense of a liability based upon appellant's "passive," "constructive," "vicarious," or "insulated" fault, for

---

**10.** LSA–Civil Code Article 2103 provides:

When two or more debtors are liable in solido . . . [the obligation] should be divided between them. As between the solidary debtors, each is liable only for his virile portion of the obligation. [*Certain Underwriters at Lloyd's v. United States,* 511 F.2d 159, 161 (1975).]

The meaning of the term "in solido," as used in the above statute, is found in Article 2091 of the Civil Code:

There is an obligation *in solido* on the part of the debtors, when they are all obliged to the same thing, so that each may be compelled for the whole, and when the payment which is made by one of them exonerates the others toward the creditor. [511 F.2d at 161.]

which the Coast Guard was the "primary" or "active" wrongdoer. *Id.* at 112.

Obviously, *Wellington* offers support for Stencel's claim. However, its rationale conflicts with the other cases we have already discussed. The basis for potential recovery rested on simple "tort indemnity," devoid of any implied contractual or quasicontractual overtones. As our prior discussion indicates, this form of indemnity requires some form of tort liability to the injured person by the party sought to be charged as an indemnitor, and several cases, as previously discussed, hold that *Feres* precludes any such tort liability on the part of the Government. *Wellington* does not mention this circuit's decision in *Maddux v. Cox, supra,* the two Ninth Circuit cases cited therein, or the Fifth Circuit's opinion in *Certain Underwriters at Lloyd's v. United States, supra.* Although these four cases technically may have turned upon particular state law, in fact they looked to and construed the general common law followed by most states and which law also would usually apply in an admiralty setting. *Cf. Hess v. United States,* 361 U.S. 314, 80 S.Ct. 341, 4 L.Ed.2d 305 (1960). *Wellington* cannot be regarded as turning upon a contrary special rule. Thus, the rationale of the court is inconsistent with the cases we have previously discussed.

Nor does *Wellington* offer much guidance on the availability of a third-party military-related indemnity claim. The court states that the *Feres* holding is not a *per se* bar to such relief. However, it does not further discuss the issue. Perhaps the best explanation of *Wellington* is that the tort occurred on a navigable waterway under admiralty law and that the primary claim for indemnity was based upon a quasicontractual duty to indemnify which is liberally inferred in admiralty law. Such claims have been·allowed by the Supreme Court in admiralty cases such as *Ryan Stevedoring Co., Inc. v. Pan-Atlantic S.S. Co., Inc., supra,* and its progeny, and the Supreme Court's ambiguous disposition of *Treadwell Construction Co. v. United States, supra,* see note 9, *supra,* was taken by the *Wellington* court to require adherence to the *Ryan* rule. Certainly this view is supported by the language of the *Wellington* decision.

In any event, *Wellington* offers us no persuasive analysis of the relationship of the *Feres* rationale to the scope of the Government's waiver of immunity under the FTCA. Unfortunately, this is equally true of the other circuit court opinions we have discussed, including our own in *Maddux v. Cox, supra.* No generally accepted and satisfactory consensus exists as to the reach of the *Feres* doctrine in cases in which a private tortfeasor seeks indemnity against the Government for reimbursement of claims paid to an injured military, on-duty serviceman.

▇ While we agree that the *Feres* opinion itself was not intended to decide the rights of third parties seeking indemnity, we think that the Court's emphasis on the unique nature of the military relationship is crucial to the instant case. We cannot agree with Stencel that the general language of the FTCA was intended to subject the conduct of the United States in equipping, training, and utilizing the Armed Forces to the varying standards of conduct and concomitant obligations and liabilities imposed by the states upon private citizens. The involvement of the military relationship in this case distinguishes this case from those involving workmen's compensation acts such as the Longshoreman's Act considered in *Ryan Stevedoring Co., Inc. v. Pan-Atlantic S.S. Co.,* 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), and its progeny, and the Federal Employees' Compensation Act considered in *Weyerhaeuser, supra,*[11]

---

11. In *Weyerhaeuser S.S. Co. v. United States, supra,* the federal civilian employee's injuries occurred as the result of a collision between a private vessel and an Army dredge. Both vessels were at fault. The federal employee recovered against the private vessel which then successfully sought partial indemnity from the United States. The Court's reasoning in granting 50 percent indemnity is inapposite to the circumstances of the present case for the following reasons:

1) There is no good reason in normal circumstances for excusing a military vessel from obeying nationwide (and, to a large extent,

and in *Wallenius Bremen v. United States,* 409 F.2d 994 (4th Cir. 1969).

To allow Stencel to recover in this case would require us to "visit the Government with novel and unprecedented liabilities." *Feres v. United States, supra,* 340 U.S. at 142, 71 S.Ct. at 157. The FTCA neither permits nor compels us to effect such a "radical departure" from the established rule of law that federal and military and contractual relationships are not to be governed by state law.[12] Therefore, the order of the district court dismissing Stencel's cross-claim is affirmed.

worldwide) uniform maritime "rules of the road" when operating in navigable waters.

2) The action appeared to be directly authorized by the Public Vessels Act, 43 Stat. 1112, 46 U.S.C. § 781 *et seq.*, which " 'was intended to impose on the United States the same liability * * * as is imposed by the admiralty law on the private shipowner * * *' " 372 U.S. at 600, 83 S.Ct. at 928.

3) The Government's liability for half the damages was based upon "a rule of admiralty law which, for more than 100 years, has governed with * * * clarity the correlative rights and duties of two shipowners whose vessels [were] both were at fault." *Id.* at 603, 83 S.Ct. at 930. This rule was well known to Congress when the Public Vessels Act was adopted.

4) The Federal Employees' Compensation Act expressly provided for recapture by the United States of FECA benefits paid to the employee, thus avoiding any possibility of a double recovery. *Id.* at 598 n. 2, 83 S.Ct. 926.

We note that the Supreme Court has now modified admiralty's rigid equal division of damages rule, continuing the strong current trend toward apportionment of damages according to the relative fault of the parties. *See United States v. Reliable Transfer Co.,* 421 U.S. 397, 406–07, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975). However, this does not affect our analysis of the indemnity aspect of *Weyerhaeuser.*

**12.** Stencel emphasizes the unfairness of requiring it to risk bearing the entire burden of liability for injuries for which it may have been partially, secondarily, or passively responsible. It observes that indemnity and contribution are equitable remedies evolved by the courts to ameliorate this injustice, either by distributing the loss equally through contribution or by shifting the entire burden onto the party primarily responsible through indemnity. *See* Prosser, *Law of Torts,* 3d Ed. § 278. There is some force to this argument.

In *Feres,* the Supreme Court reasoned that the simple, certain, and uniform system of military compensation to injured servicemen was intended to stand in lieu of governmental tort liability in cases where the Government might be considered at fault. We note that the District of Columbia Circuit has adopted a novel approach in response to a similar "unfairness" argument in an action for contribution. That court held that the position of a beneficiary of such a compensation scheme is analogous to that of a plaintiff who has allowed one joint tortfeasor to have "bought his peace," and that the remaining defendant is entitled to have the damages reduced by half. *Murray v. United States,* 132 U.S.App.D.C. 91, 405 F.2d 1361, 1365 (1968); *Martello v. Hawley,* 112 U.S.App. D.C. 129, 300 F.2d 721 (1962); *see Dawson v. Contractors Corp.,* 151 U.S.App.D.C. 401, 467 F.2d 727 (1972); *cf. United States v. Brown,* 348 U.S. 110, 111 n. 1, 75 S.Ct. 141, 99 L.Ed. 139 (1954).