**Edward LePATOUREL, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Valerie LePATOUREL, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. Nos. 76–0–180, 76–0–181.**

United States District Court, D. Nebraska.

March 16, 1977.

Thomas J. Culhane of Erickson, Sederstrom, Johnson & Fortune, Omaha, Neb., for plaintiff.

Daniel E. Wherry, U. S. Atty., and Thomas D. Thalkin, Asst. U. S. Atty., (for District of Nebraska), Omaha, Neb., for defendant.

HANSON, District Judge.

The primary question presented in these cases is whether a United States District Court Judge, while driving his personal automobile between designated court points during working hours, is an "employee of the government" within the meaning of the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*

Plaintiffs brought these related negligence actions in the state district court of Nebraska, seeking damages for injuries alleged to have occurred when their automobile was struck from the rear on Interstate Highway 80 in Sarpy County, Nebraska. Named as the sole defendant was Robert V. Denney, a United States District Court Judge for the District of Nebraska, who plaintiffs assert was driving the car which struck their vehicle. In reliance on Judge Denney's role as a federal employee, the United States removed the cases to federal district court under the government drivers section of the Federal Tort Claims Act, 28 U.S.C. § 2679(b).[1] Having done so, the

1. The petition for removal was subsequently amended to also allege federal jurisdiction under a provision of the removal statute itself, 28 U.S.C. § 1442(a)(3), which applies to suits against officers of the United States Courts based upon acts under color of office or within the performance of their official duties. If Judge Denney is covered by the Tort Claims Act, however, § 2679(b) provides that the plaintiffs' sole remedy is a suit against the United States under that Act.

government now urges that summary judgment be granted in its favor since the plaintiffs have failed to file their administrative claim with the appropriate agency under 28 U.S.C. § 2675. In response, plaintiffs seek to have the cases remanded to state district court for the reason that Judge Denney is not an "employee of the government" within the meaning of the Tort Claims Act. With the issue so framed, the cases appear to present a question of first impression under the Act.

## I.

Title 28 of the United States Code, § 1346(b), provides that

> Subject to the provisions of [the Federal Tort Claims Act], the district courts, . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

The definitional section of the Tort Claims Act, 28 U.S.C. § 2671, states that

> "Employee of the government" includes officers or employees of any federal agency, members of the military or naval forces of the United States, and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation.

Section 2671 further provides that

> . . . [T]he term "Federal agency" includes the executive departments, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States, but does not include any contractor with the United States.

As one author has noted, the Act's "federal agency" definition "is a somewhat unsatisfactory one, for it leaves doubt whether the legislative and judicial branches are covered by its terms." Jayson, *Handling Federal Tort Claims,* § 202.01 at 8–7 (1974). This doubt has not been dissipated by the few federal cases which have addressed the question of whether federal judges are "employees of the government" within the meaning of the Act.[2]

*Cromelin v. United States,* 177 F.2d 275 (5th Cir. 1949), *cert. denied,* 339 U.S. 944, 70 S.Ct. 790, 94 L.Ed. 1359 (1950), appears to be the first reported decision to touch upon the Act's coverage where a federal judge is involved. In that case the Tort Claims Act was invoked by a plaintiff seeking to recover damages from the United States based upon the acts of a federal district judge and a bankruptcy trustee in handling a prior case involving the plaintiff. The lower court sustained the government's motion to dismiss, stating orally:

> It is in substance an effort to recover damages for what the complaint charges is malfeasance, misfeasance, and nonfeasance of a federal district judge, an action to recover damages for things that he did or failed to do as a judge in a matter pending before him. I hold that neither under the Tort Claims Act nor under any other Act of Congress can a federal district judge be held personally liable for any of his judicial decisions; and that the United States is not liable and not suable under the Tort Claims Act for the judicial decisions of a federal judge on matters heard and determined by him. I hold further that a federal district judge is not an employee of the

---

**2.** It is clear from prior suits under the Act that federal law controls the question of defining the terms "federal employee" and "federal agency." *See Pattno v. United States,* 311 F.2d 604, 605 (10th Cir. 1962), *cert. denied,* 373 U.S. 911, 83 S.Ct. 1300, 10 L.Ed.2d 412 (1963); *Hughes v. United States,* 383 F.Supp. 1071, 1072 (S.D.Iowa 1973). *See also Donham v. United States,* 536 F.2d 765, 769 (8th Cir. 1976).

United States, nor is his trustee in bankruptcy.

*Id.* at 277. This dismissal was upheld by the Fifth Circuit Court of Appeals, based upon the following reasoning:

We think the holdings are correct. The trustee, like a receiver, is an officer of court, appointed by the court, directed by the court, and paid by the court from the funds in the court. He is in no sense an agent or employee or officer of the United States. The judge is appointed by the President and confirmed by the Senate and paid from the United States treasury, but in trying cases he is a member of the independent judiciary and is not under the control of the United States any more than a member of the legislative department is in legislating. Such officers are not within the contemplation of the Tort Claims Act. If even gross errors of the judges are to be compensable out of the Treasury of the United States, very clear language would be required in a law so ordering.

*Id.* Clearly, the appellate court's affirmance was based in large part on its view that the suit was against "a judge acting as such, subject to correction on appeal." *Id.* at 278.

A similar factual context existed in the other reported Tort Claims Act decision based on the alleged tortious conduct of a federal judge, *Foster v. MacBride,* 521 F.2d 1304 (9th Cir. 1975). The *Foster* court held that dismissal of a damage suit against a federal judge "for certain [of his] allegedly improper rulings in another action" was barred by the doctrine of judicial immunity. *Id.* at 1305. The Court further stated as follows:

In his Brief on Appeal, appellant contends that the Federal Tort Claims Act . . . provides a proper jurisdictional basis for suit. However, a federal district judge in trying cases is a member of the independent judiciary and is not under the control of the United States. Therefore, he is not an "employee of the government" as required by 28 U.S.C. § 1346 *Cromelin v. United States* . . . . .

*Id.*

The precedential weight of *Foster* and *Cromelin* is undercut by the fact that the result reached therein would be the same in both cases even if the judges *had* been deemed to be "government employees." *Foster* recognized that judicial immunity can properly be urged by individual judges who find themselves defendants based upon acts they engaged in while on the bench. When the United States is sued under the Act, instead of the individual judge, the "discretionary function or duty" exception to liability of 28 U.S.C. § 2680(a) can be urged to achieve the same result. *See Coates v. United States,* 181 F.2d 816, 819 (8th Cir. 1950). Thus, because *Cromelin* and *Foster* both dealt with suits based upon the on-the-bench activities of federal judges, a finding of Torts Claims Act coverage would not have been determinative—the discretionary act exception appears to be as broad as judicial immunity. Here, of course, Judge Denney is not being sued for rulings he made in a case involving the plaintiffs. Instead, it is asserted that he negligently caused them damage while driving his car, albeit in furtherance of court-related activity. The discretionary function exception is plainly inapposite here, *Dalehite v. United States,* 346 U.S. 15, 28, 34, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), yet Judge Denney was acting in a court-related role. The question of Tort Claims Act coverage thus becomes crucial.[3]

Given the absence of controlling caselaw precedent, the parties' primary arguments have focused on the words of the Act itself. As previously noted, the term "employee of

3. The record discloses that plaintiffs did not file administrative claims prior to instituting these lawsuits. If the United States is correct in its assertion that Judge Denney is covered by the Act, its summary judgment motion must be sustained. Plaintiffs' two-year filing period expired in May of 1974, and under *Melo v. United States,* 505 F.2d 1026 (8th Cir. 1974), filing an administrative claim is a "mandatory condition precedent" to pursuing a Tort Claims Act suit against the United States. *Id.* at 1028.

the government" includes officers and employees of "any federal agency." Section 2671 of the Act defines "federal agency" to "include" (1) executive departments, (2) military departments, (3) independent establishments of the United States, and (4) corporations acting as instrumentalities or agencies of the United States. The definition expressly excludes "any contractor with the United States." 28 U.S.C. § 2671.

Plaintiffs assert that the federal judiciary falls outside each of the "agencies" specified by the Act. There can be no dispute that the federal judiciary is not a "military department" or a "corporation" acting as an instrumentality of the government. Similarly, the judiciary is not an executive department as that term is illustrated in 5 U.S.C. § 101.[4] Finally, the judiciary would not qualify as an "independent establishment" as defined in 5 U.S.C. § 104.[5] The gist of plaintiffs' argument is that since Congress defined "federal agencies" to include four specific types of governmental entities, but not the judiciary, the latter is thus excluded from the Act's coverage.

In response, the defendant stresses the fact that the statutory definition of section 2671 provides that the term "federal agency" *includes* the four enumerated examples. To the United States, "it is implied that all other government agencies, other than those specifically excluded, are covered by the Tort Claims Act." In support of this interpretation, the United States cites a Senate Committee Report to the effect that Section 2671 "makes it clear that its provisions cover all Federal Agencies, . . . and all Federal officers and employees. . . ." S.Rep. No. 1400, 79th Cong. 2nd Sess., p. 31 (1946). *See also Jayson, supra,* at § 202.02. For further support, the United States relies on the case of *McNamara v. United States,* 199 F.Supp. 879 (D.D.C. 1961), which ruled that the federal agency definition of the Tort Claims Act "applies to all three branches of the Government." *Id.* at 881.

The Court finds neither of the government's arguments to be overly persuasive. Insofar as legislative history is concerned, it is inconclusive on this point. "Efforts to permit tort suits against the Government began in 1925 with the introduction of H.R. 12178, 68th Cong., 2d Sess. Thereafter, at least one bill was introduced in every Congress, with the exception of the Seventy-fifth, until the present Act was passed by the Seventy-ninth Congress in 1946." *United States v. Muniz,* 374 U.S. 150, 155, 83 S.Ct. 1850, 1854, 10 L.Ed.2d 805 (1963). As might be imagined from such an extended period of legislative consideration, numerous reports, documents, and resolutions were generated. From its review of certain of the documents which emerged during this process, the Court is of the belief that the legislative history which might be said to address the point at issue here is simply too ambiguous a basis on which to form a definite conclusion.

Having found the United States' legislative history position to be unavailing, the Court will next address the government's argument that prior judicial interpretation of the Tort Claims Act, in cases not involving judges, supports the view that the judiciary is covered by the Act. The Court believes that prior caselaw does provide the answer to the question of coverage at issue here; the cases dictate, however, that judges are not within the Act's scope.

The United States places primary reliance on *McNamara v. United States,* 199 F.Supp. 879 (D.D.C.1961). That case involved a claim for damages by a woman who slipped and fell while touring the Capitol in Washington, D. C. She based her claim on negligence, asserting a duty on the part of the United States to keep the Capitol floors reasonably safe, and a breach of

---

4. Section 101 lists the Departments of State, Treasury, Defense, Justice, Interior, Agriculture, Commerce, Labor, Health, Education and Welfare, Housing and Urban Development, and Transportation as "executive Departments."

5. Section 104 defines independent establishments to include (1) establishments in the executive branch which are not executive departments, military departments, or government corporations; and (2) the General Accounting Office.

that duty in allowing the floor to become dangerously slippery and worn. Because her claim was not based upon the actions of any particular employee, the suit was apparently one which would have to be against the United States itself, or not at all. As a defense to the plaintiff's claim, the United States asserted that the Tort Claims Act was limited to torts of the executive branch, and did not encompass activities of the legislative or judicial branches of government.[6] The government's arguments were rejected as follows:

The Federal Tort Claims Act is a comprehensive statute, the purpose of which was to waive governmental immunity to suit in tort which this country originally inherited from the immunity accorded to the King of England, and it might be said in passing that the British Sovereign has also waived immunity to suit in tort some years ago. The Act was a far-reaching reform in jurisprudence. It was the work of many minds over many years, and unlike other statutes waiving governmental immunity to suit in specific matters, this statute should receive and has received a liberal construction. When we look at the phraseology of the statute it is not limited to the Executive Branch of the Government. It refers to the liability of the United States (28 U.S.Code, § 1346) and to the negligent or wrongful act or omission of any employee of the Government. There is no limitation there to the Executive Branch of the Government or to the employees of the Executive Branch of the Government.

It is true, as is pointed out by Government counsel, that 28 U.S.Code, § 2671, describes the meaning of the term "federal agency". It should be observed that this is not an exclusive definition, but provides that the term "federal agency" shall include certain branches of the Government. It is obvious that the purpose of that definition was to make certain that government-owned corporations and government-controlled corporations should be included as branches of the Government for the purpose of the Federal Tort Claims Act. The Court is unable to see any other purpose of that clause.

Finally, there is no legislative history indicating any desire or intention to limit the statute in the manner contended in this case. It is the view of this Court that to adopt such a narrow limitation would defeat a part of the beneficent purposes of the statute. For this reason, the Court adheres to its ruling that the statute applies to all three branches of the Government.

*Id.* at 880–81.

Judge Holtzoff, the author of *McNamara,* had previously expressed a similar view in *Gilroy v. United States,* 112 F.Supp. 664 (D.D.C.1953). *Gilroy,* like *McNamara,* was a tort suit based upon the general proprietary interests of the United States, as opposed to the acts of a particular employee. It was ruled in *Gilroy* that:

The purpose of the Federal Tort Claims Act was to abrogate the immunity of the United States against suit in tort. Its purpose was to make the United States liable to suit in tort in the same manner as anyone else. Unlike other statutes waiving governmental immunity, the Federal Tort Claims Act should be liberally construed in order to effectuate the purpose that was intended by it's framers.

*Id.* at 665–66.

It is the Court's conclusion that the "liberal construction" rationale of *McNamara* and *Gilroy* is an improper interpretation of the statute. The pending statutory construction issue is whether the United States has waived its immunity from suit when claims are made based on the alleged negligence of a federal judge. Thus, reasoning as to the applicability of the Tort Claims Act must start "from the accepted jurisprudential principle that no action lies against the United States unless the legislature has

---

6. While coverage as to both the legislative and judicial branches was discussed in the case, it would appear that only the legislative branch

was properly implicated, since the fall took place in the Capitol.

authorized it." *Dalehite v. United States,* 346 U.S. 15, 30, 73 S.Ct. 956, 965, 97 L.Ed. 1427 (1953). The United States "can be sued only to the extent that it has waived its immunity." *United States v. Orleans,* 425 U.S. 807, 814, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390 (1976); *see also Donham v. United States,* 536 F.2d 765, 769 (8th Cir. 1976). Based solely on this long-standing principle, the total omission of any reference to the federal judiciary in Section 2671 can be deemed fatal to the government's argument that judges' acts are encompassed by the statutory waiver. Indeed, even if it were to be concluded that the waiver was simply ambiguous on the point, the government's position would still fail. As the United States Supreme Court stated in *Dalehite,* "our decisions have interpreted the Act to require *clear relinquishment* of sovereign immunity to give jurisdiction for tort actions." 346 U.S. at 31, 73 S.Ct. at 965 (emphasis added).

The government's position is equally damaged by the fact that federal judges are not the type of government "employee" whose torts the Act was intended to cover. The Act envisions an employer-employee relationship based upon an element of *control* which is simply lacking when the relationship of the United States to its federal judges is analyzed. *See Cromelin v. United States,* 177 F.2d at 277. The "federal agency" definition of § 2671 excludes independent contractors with the United States from Tort Claims Act coverage. If federal judges are to be analogized to any group mentioned in § 2671, independent contractors would appear to be the most apt comparison.

The contractor exception of § 2671 adopts "the common-law distinction between the liability of an employer for the negligent acts of his own employees and his liability for the employees of a party with whom he contracts for a specified performance." This distinction turns "on the absence of authority in the principal to control the physical conduct of the contractor in performance of the contract." *Logue v. United States,* 412 U.S. 521, 526–27, 93 S.Ct.

2215, 2219, 37 L.Ed.2d 121 (1973). To this Court, there is an absence of authority in the *principal,* the United States, to control the physical conduct of Judge Denney under the facts of this case.

The independence of the federal judiciary can hardly be questioned. As the United States Supreme Court has noted:

> [Federal] courts are presided over by judges appointed for life, subject only to removal by impeachment. Their compensation cannot be diminished during their continuance in office. The provisions of Article III were designed to give judges maximum freedom from possible coercion or influence by the executive or legislative branches of the Government.

*United States ex rel. Toth v. Quarles,* 350 U.S. 11, 16, 76 S.Ct. 1, 4, 100 L.Ed. 8 (1955). This is not to say that federal judges each act subject to their own whims. Control does exist; the important factor for purposes of the instant analysis is that it is internally imposed. The mechanics of this system of internal control are set forth in various sections of Title 28 of the United States Code. The system is tiered, in much the same way as a federal district court order can be reviewed by a federal court of appeals and possibly the United States Supreme Court. Simply described, district court judges possess a great deal of autonomy in conducting the business of their particular court. Should disagreement arise between the judges of a certain district, the judicial council of the appropriate circuit shall settle the dispute. 28 U.S.C. § 137. In addition to addressing particular problems, the judicial councils of the various circuits are obligated by statute to meet twice a year. 28 U.S.C. § 332. These circuit councils, separately composed of the active appellate judges of each circuit, "shall make all necessary orders for the effective and expeditious administration of the business of the courts" within that circuit. "The district judges shall promptly carry into effect" judicial council orders. *Id.* *See Chandler v. Judicial Council of the Tenth Circuit,* 382 U.S. 1003, 86 S.Ct. 610, 15 L.Ed.2d 494 (1966) (Misc. Order). In

addition to this structure, the Judicial Conference of the United States, over which the Chief Justice of the United States presides, meets at least annually to continually analyze and endeavor to improve the operations of the United States Courts. 28 U.S.C. § 331. The conference consists of representatives from federal courts throughout the United States.

The above outline is by no means comprehensive. Its purpose is merely to demonstrate that the federal judiciary is structured to supervise itself. The relevance of this scheme to the case at hand is the absence of supervision of the "day-to-day operations" of the federal judiciary by any arm of the federal government. *United States v. Orleans*, 425 U.S. at 815, 96 S.Ct. 1971. Because judges are self-regulated, they do not fall within the traditional employer-employee mold which is essential to Federal Tort Claims Act application.[7] As stated in dissent by Justice Black in *Chandler, supra,* "one of the great advances made in the structure of government by our Constitution was its provision for an independent judiciary—for judges who could do their duty as they saw it without having to account to superior court judges or to anyone else except the Senate sitting as a court of impeachment." 382 U.S. at 1005-06, 86 S.Ct. at 611.

Thus, two strong reasons exist to conclude that federal judges are not covered by the federal Tort Claims Act. First, they are not expressly included in the definitional section of the Act. Second, to the extent federal judges are analogized to any of the five groups so mentioned, a study of their relationship to the United States reveals that they resemble independent contractors more than they resemble any of the four "included" entities of Section 2671. To the Court, these dual reasons dictate the conclusion that the United States was not acting in accordance with the Act when it substituted itself for Judge Denney in the instant case.[8] Accordingly, the defendants'

---

**7.** It is clear from *Orleans* that the fact federal judges are paid by the United States does not determine the question of control; actual supervision is needed. 425 U.S. at 814–15, 96 S.Ct. 1971.

**8.** An inquiry often overlooked in statutory construction analyses is whether the interpretation adopted makes any sense. To the Court, it is highly logical that Congress intended to exclude federal judges from Tort Claims Act coverage. The following statements regarding the origins of the Tort Claims Act were made in *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950):

The Tort Claims Act was not an isolated and spontaneous flash of congressional generosity. It marks the culmination of a long effort to mitigate unjust consequences of sovereign immunity from suit. While the political theory that the King could do no wrong was repudiated in America, a legal doctrine derived from it that the Crown is immune from any suit to which it has not consented was invoked on behalf of the Republic and applied by our courts as vigorously as it had been on behalf of the Crown. As the Federal Government expanded its activities, its agents caused a multiplying number of remediless wrongs—wrongs which would have been actionable if inflicted by an individual or a corporation but remediless solely because their perpetrator was an officer or employee of the Government. Relief was often sought and sometimes granted through private bills in Congress, the number of which steadily increased as Government activity increased. The volume of these private bills, the inadequacy of congressional machinery for determination of facts, the importunities to which claimants subjected members of Congress, and the capricious results, led to a strong demand that claims for tort wrongs be submitted to adjudication. Congress already had waived immunity and made the Government answerable for breaches of its contracts and certain other types of claims. At last, in connection with the Reorganization Act, it waived immunity and transferred the burden of examining tort claims to the courts. The primary purpose of the Act was to extend a remedy to those who had been without; if it incidentally benefited those already well provided for, it appears to have been unintentional. Congress was suffering from no plague of private bills on the behalf of military and naval personnel, because a comprehensive system of relief had been authorized for them and their dependents by statute.

*Id.* at 139–40, 71 S.Ct. at 156. (Citations omitted.)

It is apparent to this Court that Congress has never suffered from a "plague of private bills" based upon the tortious actions of federal judges, because the judiciary has been immune from suit for "judicial acts" since the beginning

motion for summary judgment due to plaintiffs' failure to file an administrative claim under the Act must be overruled, and removal cannot be supported under the government driver's act, 28 U.S.C. § 2679(b).

## II.

Having determined that Judge Denney was not within the coverage of the Tort Claims Act under the facts of this case, it remains to be considered whether defendants' removal is justified under 28 U.S.C. § 1442(a)(3).

At oral argument on the pending motions, counsel for the defendant requested the Court to consider allowing an interlocutory appeal of the Tort Claims Act issue, should its summary judgment motion prove unsuccessful. The Court deems that its denial of the summary judgment motion based upon the Tort Claims Act involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of this litigation. 28 U.S.C. § 1292(b).

Accordingly,

IT IS HEREBY ORDERED that defendant's motion to consolidate these cases is sustained, and that defendant's amended motion for summary judgment is overruled.

IT IS FURTHER ORDERED that defendant is granted leave to make application for an interlocutory appeal of this ruling in the Court of Appeals.

IT IS FURTHER ORDERED that plaintiffs' amended motion to remand will be addressed by this Court, if necessary, upon completion of whatever proceedings occur in the Court of Appeals.

of the Republic. *Bradley v. Fisher,* 13 Wall. 335, 20 L.Ed. 646 (1872); *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Meredith v. Van Oosterhout,* 286 F.2d 216 (8th Cir. 1960), *cert. denied,* 365 U.S. 835, 81 S.Ct. 749, 5 L.Ed.2d 745 (1961). The rather unfortu-

nate situation Judge Denney finds himself in is sufficiently narrow to have been wholly overlooked by those drafting the act—he is being sued for "non-judicial" acts which nevertheless are factually related to his judicial role.