Edward LePATOUREL, Plaintiff,

v.

UNITED STATES of America, Defendant.

Valerie LePATOUREL, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. Nos. 76–9–180, 76–0–181.

United States District Court, D. Nebraska.

Sept. 22, 1978.

Thomas Culhane, of Erickson, Sederstrom, Leigh, Johnson, Koukol & Fortune, P. C., Omaha, Neb., for plaintiffs.

Edward G. Warin, U. S. Atty., Thomas D. Thalken, Asst. U. S. Atty., Omaha, Neb., for defendant U. S. A.

## MEMORANDUM ON REMAND FROM THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

HANSON, District Judge.

The remaining issue in these cases concerns whether plaintiffs are to have an opportunity to pursue their claims of negli-

gence pursuant to the applicable provisions of the Federal Tort Claims Act (FTCA). Understanding the present procedural cast of the cases requires brief reference to the prior proceedings herein.

The question of consuming importance to date has been whether claims resulting from the allegedly negligent conduct of a United States District Judge which causes injury to another while the judge is acting in his official, but not judicial, capacity are subject to determination under the FTCA. The question arose when the government removed litigation in the Nebraska state courts against U. S. District Court Judge Robert V. Denney to this Court. The government thereupon moved for summary judgment due to the failure of plaintiffs to timely file an administrative claim. Plaintiffs, challenging the applicability of the FTCA, sought remand to the Nebraska courts. This Court ruled that Judge Denney was not an "employee of the government" so as to fall within the ambit of the Act. 28 U.S.C. § 2671. *LePatourel v. United States,* 430 F.Supp. 956, 963–64 (D.Neb. 1977). On appeal the Court of Appeals reversed, finding that the Act applied to the judicial branch, including federal judges. *United States v. LePatourel,* 571 F.2d 405, 410 (8th Cir. 1978). The Court of Appeals originally ordered remand with directions to enter judgment for the government since plaintiffs had failed to file an administrative claim within the prescribed two-year period as required by 28 U.S.C. §§ 2401(b), 2675(a). This would, of course, have the harsh effect of denying plaintiffs any forum in which to seek recovery for the severe personal injuries sustained by Mrs. LePatourel through the alleged negligence of the government. Plaintiffs subsequently filed a petition for rehearing and suggestions for rehearing en banc with the Court of Appeals in which they asserted for the first time that if federal judges are covered by the FTCA, then the Act should be applied prospectively in this regard so as not to completely foreclose plaintiffs' recovery. This evoked concern from the Court of Appeals. However, that Court felt that the record was inadequate to provide a factual basis for determination of the question of prospective application. In the interests of justice, the Court of Appeals stayed its prior mandate and remanded the causes to this Court for the conduct of a plenary evidentiary hearing. Under the terms of said remand, subsequent proceedings were to be as follows:

> The district court should endeavor to ascertain why the appellees failed to process their claim administratively within the prescribed period of time. The court should focus in particular upon whether the appellees, through prior counsel whom they may have retained or with whom they may have consulted, were aware of the mandated administrative procedure, and whether they were lulled into believing that a processing of the claim with the appropriate federal agency was not a prerequisite to court action. After fully exploring these matters, the district court should file findings of fact and conclusions of law, or a memorandum opinion in lieu thereof, and cause the same to be certified to this court. This court will retain jurisdiction of the appeal pending further proceedings in accordance with the directions set forth above. Upon consideration of the district court's action, this court will proceed to a final disposition of the appeal and will determine whether the appellees may proceed against Judge Denney under the Federal Tort Claims Act.

571 F.2d at 411.

In obedience to the directions of the Court of Appeals, this Court held a plenary evidentiary hearing as directed on May 19, 1978. The parties have since filed proposed findings of fact and conclusions of law. This memorandum, and the findings and conclusions contained herein, addresses itself to the factual inadequacies in the former record identified by the Court of Appeals. This Court has set forth certain conclusions of law herein on the basis of the facts developed since the Circuit's remand. In so doing, the Court recognizes that because the Court of Appeals has retained jurisdiction and reserved to itself the deter-

mination of whether its opinion is to apply prospectively as it relates to these plaintiffs, the conclusions reached by this Court are in the nature of recommendations to the Court of Appeals.

## STATEMENT OF FACTS

### A.

On May 12, 1972, while enroute from Lincoln, Nebraska to Omaha, Nebraska, plaintiff Valerie LePatourel was involved in a traffic accident on Interstate 80. At the time, Mrs. LePatourel was a passenger in an automobile operated by her son Gary. Precisely what occurred has yet to be determined, but it is undisputed that as the LePatourel vehicle slowed in obedience to the directions of a flagman it was struck from behind by another vehicle. The impact caused a small boat in the rear of the LePatourel vehicle to strike Mrs. LePatourel in the head causing her severe injury. Two other vehicles were involved in the accident, one operated by an individual named Terry Ringling, the other by Judge Denney.

At the time of the accident Judge Denney was operating his vehicle between court points in Nebraska while on official business.

As noted, Mrs. LePatourel was severely injured in the accident. She was in intensive care at an Omaha hospital for some two and one-half weeks, was unconscious for a lengthy period of time, has no memory of events for a three-month period following the accident, and her recuperation has been slow. Because of her injuries, and, as the Court observed, her obvious reliance on her husband, Mrs. LePatourel has personally participated very little in the pursuit of her legal claims. She met on only one occasion with an attorney, Mr. James Pratt, one of three who have represented her over the course of six years; and her memory of that meeting is unclear. It has been left to Mr. LePatourel to seek compensation for his wife's injuries. Accordingly, the focus is primarily upon his activities.

Mr. LePatourel became aware of the fact that Judge Denney was one of the drivers involved on the same day the accident occurred. He was also aware of Judge Denney's employment as a federal judge as were the various attorneys contacted by Mr. LePatourel. The readily discoverable fact that Judge Denney's law clerk and secretary were with him when the accident occurred would have indicated that Judge Denney was then on official business.

Two weeks after the accident Mr. LePatourel contacted Mr. Joseph L. Leahy, an Omaha attorney, with regard to legal claims arising from the accident. After the two met, Mr. Leahy was retained by Mr. LePatourel to represent him and his wife.

Mr. Leahy represented the LePatourels from May 26, 1972 until February 23, 1973. During that time Mr. Leahy's efforts appear to have been spent largely on communication with the insurance carriers of Terry Ringling and Judge Denney. He managed to secure an offer to settle from Ringling's carrier for the policy limit of $10,000. Beyond the insurance money, Leahy considered Ringling to be judgment proof. Judge Denney's insurance carrier denied liability by letter dated November 1, 1972, observing:

> Our investigation indicated that our insured was traveling at a low rate of speed . . . had his vehicle under control, and was hit in the rear by the Ringling vehicle and then forced into your client's vehicle.

Mr. Leahy came to share this assessment of Judge Denney's potential liability, though it is evident that Leahy did little to independently investigate the facts surrounding the accident. In fact, it appears that he relied almost entirely on the report prepared by the Nebraska Highway Patrol. He did not interview any witness or participants in the accident. Mr. Leahy did, however, seek the opinion of another Omaha attorney, John P. Miller. By letter dated September 12, 1972, Mr. Miller advised Mr. Leahy that having reviewed Leahy's file on the case he had concluded that "there was no actionable negligence on [Judge Den-

ney's] part." Though Mr. Miller has filed claims under the FTCA, he did not mention the potential applicability of the FTCA to the LePatourel situation.

Thereafter Mr. Leahy met with Mr. LePatourel and informed him of his conclusion that Judge Denney was not liable. At some point within this general time frame, Mr. LePatourel began to have second thoughts about Mr. Leahy's handling of the case and sought other legal advice.

On the recommendation of the manager of the Hilton Hotel where he was employed, Mr. LePatourel consulted the hotel's attorney, Marvin G. Schmid, also an Omaha attorney. After having matters explained to him, Mr. Schmid opined that in his judgment Mr. Leahy's conclusion about the viability of a claim against Judge Denney was premature in the absence of any witness statements. Mr. LePatourel did not attempt to retain Mr. Schmid and no mention was made in the course of their conversation of the FTCA or its administrative claim requirement.

Mr. LePatourel's next contact with an attorney occurred through his wife's doctor. The doctor recommended that he talk to Robert O'Connor, Sr., another Omaha attorney. Mr. O'Connor and Mr. Leahy met in December 1972. The former was reluctant to handle the case because he practiced in the federal court for this district, and he referred Mr. LePatourel to a Council Bluffs, Iowa attorney, Mr. James Pratt. Mr. O'Connor did not mention the FTCA to Mr. LePatourel.

Mr. Pratt and Mr. LePatourel subsequently met and discussed the case. Mr. Pratt was willing to undertake the representation of the LePatourels and, since he remained dissatisfied with Mr. Leahy's representation, Mr. LePatourel discharged Mr. Leahy on February 23, 1973 and shortly thereafter retained Mr. Pratt.

During the course of his representation Mr. Leahy never mentioned the potential applicability of the Federal Tort Claims Act to Mr. LePatourel. In fact, Mr. Leahy had never been involved with prosecuting claims under the Act, was unfamiliar with its pro-

visions, and it never occurred to him that Judge Denney might be protected by it in the situation at hand. Mr. Leahy's failure to make any inquiry in this regard can be explained in part by his conclusion that Judge Denney was not negligent.

Mr. Pratt represented the LePatourels from February 1973 until early in 1975, and he accepted the case only after inquiry of his senior partner whether a lawsuit against a federal judge would cause the firm any embarrassment. Mr. Pratt did some additional investigation into the accident and concluded that there was a colorable claim against Judge Denney. At least for the purpose of filing a petition in Nebraska state court, Mr. Pratt was willing to rely on the maxim that in a rear end "accordian-type" collision the best practice is to pursue claims against all of the drivers involved.

Mr. Pratt eventually prepared a petition naming Judge Denney as a defendant, but it was never filed. The LePatourels' litigation continued to ripen very slowly. Mrs. LePatourel's injuries had not yet stabilized. Mr. Pratt was pursuing his investigation. There was difficulty in arranging for local counsel in Nebraska because of reluctance on the part of some attorneys to represent a plaintiff, even nominally, in an action against a federal judge. And, Mr. Pratt was relying on the Nebraska four-year statute of limitations.

The slow pace and apparent inactivity continued to bother Mr. LePatourel. As he had done before, Mr. LePatourel initiated contacts with other attorneys, writing to Melvin Belli whose office in turn referred him to another Omaha attorney, Mr. Patrick Cooney. Initial contact with the latter proved disappointing and Mr. Cooney does not appear to have discussed the case in depth with Mr. LePatourel.

By June 1974 Mr. Pratt was ready to file the lawsuit in the Nebraska courts. As a courtesy, Mr. Pratt wrote to Judge Denney on June 12, 1974 advising him that a suit would soon be filed on behalf of the LePatourels against the Judge and the other driver, Terry Ringling, in the District Court

of Douglas County. Mr. Pratt received no response directly from Judge Denney, but shortly after the letter was sent Mr. Pratt was contacted by the United States Attorney for the District of Nebraska, Mr. Schaphorst. In a telephone conversation, Mr. Schaphorst told Mr. Pratt that in his opinion the LePatourels' claims were covered by the FTCA and were now barred because timely administrative claims had not been filed.

Unlike the LePatourels' first attorney, Mr. Pratt was familiar with the FTCA and had pursued claims under its provisions. Still, until Mr. Schaphorst's phone call it had not occurred to Mr. Pratt that the instant case fell within the ambit of the Act. Mr. Pratt ascribed two basic reasons for not considering the Act's applicability. First, the circumstances under which the accident occurred did not seem to indicate that Judge Denney was operating his vehicle within the scope of his employment. Though Mr. Pratt knew Judge Denney's travel route and was aware that he was accompanied by his secretary (Mr. Pratt was apparently not aware of the fact that Judge Denney's law clerk also was in the vehicle), he had not ascertained that Judge Denney was on official business and receiving per diem and mileage allowance from the government.[1] Had the status of federal judges been clear under the law, Mr. Pratt surely should have been alerted to the potential applicability of the FTCA. However, the second, and clearly most significant reason why Mr. Pratt did not pursue the FTCA was because he assumed that a federal judge was not an employee of the government. It is worth noting in this regard that as a practitioner familiar with the administrative claim requirements of the Act, Mr. Pratt was not sure, in retrospect, who he would have filed the claim with.[2]

After speaking with Mr. Schaphorst, Mr. Pratt did some research on the FTCA and concluded that it did not apply to a federal judge. He did not, however, ever advise the LePatourels of potential difficulty with the Act. By June 1974 the two-year FTCA limitations period had passed with the result that there was some chance—as events have proved, a quite substantial one—that the LePatourels would be time-barred from any relief. Mr. Pratt advised the LePatourels only that the four-year Nebraska statute of limitations governed, and never made mention of the FTCA in his conversations with them.

As noted, Mr. Pratt did not initiate a lawsuit on the LePatourels' behalf though he prepared to do so as early as June 1974. The reason for this was a dispute which developed between Mr. Pratt and Mr. LePatourel as to the disposition of the $10,000 to be paid by Terry Ringling's insurance carrier. Mr. Pratt felt that he was entitled to fees from this sum, and that a certain additional amount should be set aside for the future expenses of the litigation. Mr. LePatourel disagreed, the disagreement persisted, and Mr. Pratt's representation was ultimately terminated in early 1975. Subsequently, the LePatourels retained present counsel, Mr. Culhane, who was the first attorney to discuss the FTCA with them.[3]

1. In this regard, it should be noted that it does not appear Judge Denney's insurance carrier ever sought to avoid liability on the theory that the LePatourels' claims should be pursued under the FTCA.

2. The Court of Appeals obviated any difficulty in this respect by noting that a claim would have to be filed with the Administrative Office of the United States Courts. 571 F.2d at 410.

3. Neither the LePatourels nor any of their attorneys had direct contact with Judge Denney's office, Judge Denney personally, or the Administrative Office of the United States Courts, with the exception of Mr. Pratt's June 12, 1974 letter to Judge Denney. In contrast to the LePatourels' attorneys, Judge Denney and the Administrative Office were well aware of the potential application of the FTCA. On April 13, 1973, Judge Denney sent copies of all papers connected with the incident to the Administrative Office. On May 8, the Administrative Office, responding to an inquiry from Judge Denney, advised him that "[t]he Department of Justice has taken the position that judges, as well as other judicial officers and employees, are employees within the meaning of the Federal Tort Claims Act." Judge Denney was further advised, *inter alia*, ". . . you should

The LePatourels' petitions were finally filed in the District Court of Douglas County, Nebraska on April 21, 1976, and the causes were removed to this Court on April 27, 1976.

B.

The Court of Appeals directed this Court to make what could be termed a specific finding of ultimate fact: "why [did] the appellees [fail] to process their claim administratively within the prescribed period of time?" 571 F.2d 411. The answer to this question is, at bottom, very simple. The LePatourels were completely unaware of the potential applicability of the FTCA, much less the administrative claim requirement until advised by present counsel long after the two-year period had run. Furthermore, it did not occur to Mr. Leahy or Mr. Pratt within the two-year period that this might be an FTCA case, nor did any of the other three attorneys who were consulted prior to the running of the two-year period—Messrs. Miller, Schmid, and O'Connor—alert the LePatourels or their retained counsel. In the cases of Leahy and Pratt, it appears that threshold factual conclusions they had reached obscured any extensive consideration they might have otherwise given to the FTCA. Mr. Leahy had concluded that Judge Denney was not negligent. Mr. Pratt apparently felt that the circumstances surrounding the accident did not indicate that Judge Denney was acting within the scope of his office when the accident occurred, though he admits he did not direct his investigation efforts in this direction or grasp the FTCA issue. Still, the fact remains that the LePatourels failed to timely pursue an administrative claim because neither they, nor their attorneys were aware that the FTCA and its mandated administrative procedure afforded the only avenue of relief.

The LePatourels were not "lulled" into believing that an administrative claim was not a prerequisite to court action in the sense that they were affirmatively misled.[4] The record reflects that the five attorneys who were retained or consulted in some depth within the two-year period simply did not perceive the FTCA issue, or the holding of the Court of Appeals. The failure to file an administrative claim in the circumstances of this case was purely the product of ignorance of the necessity of such a claim on the part of the LePatourels and their attorneys.

Lastly, the Court should note what is transparently clear from this record; there was no lack of diligence on the part of the LePatourels in pursuing their claims within their capabilities as lay persons. Neither is schooled in the law. Mr. LePatourel is employed in the maintenance engineering department of the Hilton Hotel in Omaha. Mrs. LePatourel is a housewife. Two weeks after the accident Mr. LePatourel, on behalf of his wife, made initial contact with Mr. Leahy. Mr. LePatourel maintained frequent contact with counsel thereafter. He pushed and prodded when he thought there was delay. He consulted other counsel when told by Mr. Leahy that the latter did not believe Judge Denney to have been negligent. He persisted in the face of reluctance on the part of at least one attorney to get involved in litigation with a federal judge. He pushed for action from Mr. Pratt and sought other counsel when delay again attended his wife's claims. Throughout the entire history of this matter, Mr. LePatourel, and through him his wife, has, to say the least, shown no inclination to sleep on his or his wife's rights. This Court has no doubt that had Mr. LePatourel had any hint that an administrative claim was a prerequisite to judicial pursuit of claims arising from the allegedly tortious conduct herein, Mr. LePatourel would have taken

advise a claimant that they [sic] should submit their [sic] claim . . . to the Director, Administrative Office of the United States Courts." Of course, no claimant appeared until Mr. Pratt's June 12, 1974 letter to Judge Denney.

4. The LePatourels were misled, however, on the question of the amount of time they had within which to initiate an action. Both Mr. Leahy and Mr. Pratt informed them that they had four years under Nebraska law from the date of the accident.

steps to insure that such a claim was submitted.

## CONCLUSIONS OF LAW

As stated previously, any conclusions reached by this Court in the present proceeding are only in the nature of recommendations to the Court of Appeals. The fact that the Court of Appeals retained jurisdiction means that this Court is presently without power to make judgment entry or modify its March 16, 1977 order overruling the government's motion for summary judgment.[5] *See Securities and Exchange Commission v. Investors Security Corp.,* 560 F.2d 561, 568 (3d Cir. 1977); *Reserve Mining Co. v. Environmental Protection Agency,* 514 F.2d 492, 541 (8th Cir. 1975) order on remand, subsequent history deleted). The Court discerns nothing in the Court of Appeals' remand which invites modification of prior orders of this Court or judgment entry, *see* 517 F.2d at 411, though the Court of Appeals specifically did invite this Court to certify conclusions of law.

The LePatourels maintain that the Court of Appeals' precedent-setting ruling that federal judges are employees of the government for the purposes of FTCA claims should be applied prospectively in the sense that the LePatourels' claims did not statutorily accrue until the appellate holding. *See* 28 U.S.C. § 2401(b).[6] The government, on the other hand, argues that the LePatourels and their attorneys were simply ignorant of the law and did not rely on any antecedent ambiguity in the legal status of federal judges; and that the limitations period should be held to run from the date of the accident.

**5.** Prior to remand plaintiffs had not formally responded to the government's pending motion for summary judgment. This was remedied on July 5, 1978 by the filing of a response to said motions resisting summary judgment on the ground that Judge Denney's employee status should be applied prospectively.

**6.** Section 2401(b) provides:

(b) A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or regis-

As the Court of Appeals stressed, one of the primary purposes of the Federal Tort Claims Act was to waive the sovereign immunity of the United States to tort suits in order to provide an orderly system for compensating those who were injured through the tortious acts of government employees committed in the course of their employment. 571 F.2d 407-08. *See, e. g., Indian Towing Co. v. United States,* 350 U.S. 61, 68-69, 76 S.Ct. 122, 100 L.Ed. 48 (1955). The statute of limitations for tort claims found at 28 U.S.C. § 2401(b) is, as any other such statute, designed to protect the United States as a party litigant from stale claims. *Cf. Urie v. Thompson,* 337 U.S. 163, 170-71, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949). Though the administrative claim limitations period in Section 2401(b) is a jurisdictional prerequisite to suit under the FTCA, *e. g., Martin v. United States,* 436 F.Supp. 535, 547-38 (S.D.Cal.1977), when a particular claim "accrues" within the meaning of the statute presents a recurring question of federal law. *Hulver v. United States,* 562 F.2d 1132, 1134 (8th Cir. 1977). In this connection the Court is not particularly concerned to jealously guard the government's waiver of sovereign immunity for immunity is really beside the point since it has been waived to the extent that a cause of action is permitted under the FTCA.

As a preliminary observation, it is immediately clear from the record developed in this Court on remand that no purpose supporting the FTCA or the Section 2401(b) limitations period would be subserved by a

tered mail, of notice of final denial of the claim by the agency to which it was presented.

This interface with Section 2401(b) casts the prospectivity issue here in a peculiar light. Plaintiffs do not maintain that they should be relieved from an obligation to proceed under the FTCA. Rather, they assert that their claim did not "accrue" until the appellate holding. In the Court's judgment it is appropriate to treat the question of accrual in this context under familiar principles governing in situations where it is urged a new rule of law should apply prospectively.

finding that the LePatourels are foreclosed from relief. Potentially meritorious claims for compensation will be denied adjudication despite diligence on the part of the individual claimants. The Administrative Office of the Courts, through Judge Denney, had actual notice of a potential claim within a year of the accident; indeed, the Administrative Office had anticipated the legal conundrum presented by the accident and was prepared to process a claim from the LePatourels. Moreover, though six years have now passed, the matter does not appear to be so stale that the government will be prejudiced in presenting a defense. As plaintiffs' counsel points out, many of the key witnesses remain in the Omaha area.

In arguing that their claim did not accrue until the opinion of the Court of Appeals established the status of federal judges, the LePatourels seek to benefit from the line of cases which holds that where a party has "no reasonable probability of successfully prosecuting [a] claim" against the government prior to a judicial interpretation, the claim accrues when the right is created. *United States v. One 1961 Red Chevrolet Impala Sedan,* 457 F.2d 1353, 1358 (5th Cir. 1972). *See, e. g., Neely v. United States,* 546 F.2d 1059, 1068 (3d Cir. 1976). Prior reasonable probability of success would be lacking where the new case establishing the claim constitutes "an avulsive change which caused the current of the law thereafter to flow between new banks." *Hanover Shoe, Inc. v. United Shoe Machinery Corp.,* 392 U.S. 481, 499, 88 S.Ct. 2224, 2234, 20 L.Ed.2d 1231 (1968). Though prospectively is thus often a product of fundamental change in the law, *id.* at 499, 88 S.Ct. 2224, its application in the context of new claims for relief logically turns on whether the plaintiffs should have reasonably foreseen the holding establishing their claims.

■ Emphasis on the threshold importance of foreseeability is evident in the Supreme Court's discussion of the concept of "nonretroactivity" in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–08, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971).

In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, . . . *or by deciding an issue of first impression whose resolution was not clearly foreshadowed,* . . . . Second, it has been stressed that "we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." . . . Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity." (Emphasis added, citations omitted.)

*Id.; see Cipriano v. City of Houma,* 395 U.S. 701, 706, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969); *Allen v. State Board of Elections,* 393 U.S. 544, 571–72, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969). Thus, prospective application, or nonretroactivity, involves a three-part analysis: (1) whether the appellate decision established a new principle of law either by overruling past precedent which had been relied upon or by deciding an issue of first impression in a manner "not clearly foreshadowed"; (2) whether prospective application will further or retard the rule announced by the Court of Appeals; and (3) whether the rule if applied in this case would produce a "substantial inequitable result." This three-part test can appropriately be applied in the instant case.

■ As to the first of the above factors, the Eighth Circuit's holding cannot be described as a reversal of established authority on which the LePatourels might have relied. The present situation would, however, appear to involve an interpretation of the FTCA that was not clearly foreshadowed by prior developments in the law. In the two-year period following the accident

and until the Court of Appeals' decision the question of the status of a federal judge performing nonjudicial functions in the scope of his office had never been addressed by the courts. There was some relevant case law as discussed in the prior opinions of this Court and the Court of Appeals, but it far from foreshadowed the Eighth Circuit's holding. Indeed, as this Court's original holding herein and language in *Foster v. MacBride*, 521 F.2d 1304, 1305 (9th Cir. 1975) and *Cromelin v. United States*, 117 F.2d 275, 277 (5th Cir. 1949), *cert. denied*, 339 U.S. 944, 70 S.Ct. 790, 94 L.Ed. 1359 (1950) would indicate, prior to January 1978 there was substantial reason to believe that federal judges were not FTCA employees. By its holding the Court of Appeals articulated a new rule of law on what has heretofore been a novel question. In this Court's judgment, it cannot be said that the appellate holding was "clearly foreshadowed" by prior interpretation of the FTCA.

It is true, as the government points out, that Mr. Leahy and Mr. Pratt did not rely on a reasoned analysis of the issue for they failed to identify the FTCA problem. Reliance, however, is more germane where there is an established pre-existing line of authority to rely on. *Chevron Oil Co. v. Huson, supra,* 404 U.S. at 106, 92 S.Ct. 349. *See generally Lacy v. Chrysler Corp.,* 533 F.2d 353, 368 (8th Cir.) (Gibson, C. J., dissenting), *cert. denied,* 429 U.S. 959, 97 S.Ct. 381, 50 L.Ed.2d 325 (1976). In this case the state of the law was very nearly a tabula rasa with the result that failure to recognize the issue is not fatal to the LePatourels' argument for prospectivity. Indeed, it supports the argument.

Consideration of the second and third components of the *Chevron Oil* test also favors prospective application of the Circuit's holding. With respect to the former, prospective application will, if anything, further the interests served by the rule that the judiciary falls within the FTCA. The

rule was born in large part out of the Court of Appeals' sensitivity to the compensatory purposes of the Act. Dismissal because the LePatourels failed to anticipate the avenue of relief afforded by the FTCA within the two-year period hardly furthers a compensatory purpose. Nor is the rule retarded by prospective application, for the class of potential claimants similarly situated with the LePatourels cannot be so large as to threaten the interests protected by the Section 2401(b) two-year limitation.

Particularly compelling, however, is consideration of the third component; whether retroactive application would produce substantial inequitable results. This Court is convinced that it would be profoundly unfair to these plaintiffs not to allow them to proceed under the FTCA. To hold that they are now barred from pursuing an FTCA claim would punish the LePatourels for the failure of their attorneys to perceive a novel question of federal law and to protect against the chance of FTCA applicability by filing an administrative claim. The question of coverage of federal judges by the FTCA is a difficult one which during the relevant time was both unsettled and untouched. The fact that apparently none of the attorneys consulted on the case recognized the issue suggests that it would not have been evident to many practicing attorneys. While it may be true, as the Court of Appeals notes, judges are employees of the government "as a matter of common understanding," among attorneys schooled in the independence of the judiciary the perception of federal judges as employees would seem to be less clear.[7] *See Foster v. MacBride, supra* at 1305.

In the final analysis, prior to the Eighth Circuit's holding the duty to assert a claim under the FTCA was too conjectural to have been reasonably foreseen, prospective application in terms of the accrual date of the claims tends to further rather than de-

---

7. The fact that no attorney familiar with the case mentioned the FTCA, coupled with the fact that the circumstances of Judge Denney's accident presented a legal question of first impression, would probably make it difficult for the LePatourels to urge that in failing to submit a claim Mr. Leahy or Mr. Pratt breached the duty of ordinary care owed by an attorney to his client. *See Kurtenbach v. TeKippe,* 260 N.W.2d 53, 56 (Iowa 1977).

tract from the rationale supporting the Circuit's holding, and it would be plainly inequitable to deny the LePatourels a forum in which to seek relief.

In view of the foregoing, this Court will certify to the Court of Appeals its conclusion that the rule announced by the Eighth Circuit in this cause be applied prospectively as it relates to the accrual of plaintiffs' claims under 28 U.S.C. § 2401(b).

In its order on remand the Court of Appeals cited *Kelly v. United States,* 568 F.2d 259 (2nd Cir. 1978), *petition for cert. filed,* —— U.S. ——, 99 S.Ct. 106, 58 L.Ed.2d 124. That case is useful here only inferentially because of its stress on interpreting FTCA procedures in a manner which supports the purposes of the Act. *Id.* at 266. The *Kelley* holding, however, is not controlling under present circuit law.

The *Kelley* court held that the Federal Drivers Act portion of the FTCA, 28 U.S.C. § 2679(b)–(e), enacted in 1961, was not altered by the 1966 amendments to the FTCA which added the administrative claim requirement to 28 U.S.C. §§ 2401(b), 2675. Thus, *Kelley* stands for the proposition that an administrative claim is not a prerequisite to timely suits filed in state courts and removed pursuant to 28 U.S.C. § 2679(d). In this regard, *Kelley* stands directly opposite the rule applicable in this Circuit. *Meeker v. United States,* 435 F.2d 1219, 1221–22 (8th Cir. 1970).

Whether *Kelley* or *Meeker* represents the better view is a matter outside the realm of this Court's responsibility for the latter case is the law here. The Court does observe, however, that if the Court of Appeals should be persuaded by the rationale of *Kelley,* an issue would be raised in this case which the *Kelley* court found not necessary to address: "whether it was enough [for limitations purposes] that the case was commenced against the employee within the time limited by state law." 568 F.2d at 268.[8] The LePatourels' state causes of action were filed within the Nebraska four-year period.

In consideration of the above and pursuant to the directions of the Court of Appeals,

IT IS ORDERED that the Clerk of Court certify this memorandum to the United States Court of Appeals for the Eighth Circuit.

---

8. Factually *Kelley* is inapposite to the instant case because the claimants therein had filed their state suit within the two-year claims period provided in 28 U.S.C. § 2401(b).